GRADY H. STEVENS *et al., Plaintiffs in Error,* v. INDEPENDENT FERTILIZER COMPANY, *Defendant in Error.*

### Opinion Filed May 12, 1917.

1. It is incumbent upon the plaintiff in an action brought under Sections 1271 and 1272, General Statutes of 1906, to appropriately state all the facts that are essential to a recovery.

2. Sections 1271 and 1272, General Statutes of 1906, giving a special right of action to persons who purchase fertilizers and are defrauded by reason of adulterations or deficiencies in the constituent elements of the fertilizer, clearly contemplate that the test of the fertilizer by the analysis provided for shall be made with at least some degree of promptness after the delivery of the fertilizer and that more than one sample shall be taken when the quantity of fertilizer purchased makes it expedient to have plural samples to secure a fair test.

3. While the manufacturers and vendors of fertilizers should be held to a compliance with the obligations imposed upon them by law, they have a right to demand that a cause of action be stated in due course of law against them before they are required to take issue on the facts.

Writ of Error to Circuit Court for St. Johns County; George Couper Gibbs, Judge.

Affirmed.

*Hilburn & Merryday,* for Plaintiffs in Error;

*Kay & Doggett* and *Henry C. Clark,* for Defendant in Error.

WHITFIELD, J.—The first, second and third counts of the declaration herein are as follows:

"Comes now the plaintiffs, Grady H. Stevens and Ralph B. Knight, of the County of St. Johns and the State of Florida, by his attorneys Hilburn & Merryday, and sues the defendant, Independent Fertilizer Company, a corporation organized and existing under the laws of the State of Florida, and having an office and place of business in Duval County, Florida.

"(a) For that whereas on and prior to the 15th day of October, A. D. 1912, and ever since said date, the defendant has been engaged in the business of manufacturing and selling commercial fertilizer in the State of Florida, and that on or about, to-wit: that 15th day of October, A. D. 1912, in the County of St. Johns, State of Florida, the plaintiff entered into a bargain or contract with the defendant wherein and whereby the plaintiff agreed to purchase and the defendant agreed to sell and deliver to the plaintiff in said County of St. Johns, thirty-five tons of commercial fertilizer for the agreed price of $1,050.00; and that it was the duty of the defendant upon selling or offering said commercial fertilizer or fertilizing material for sale, to securely attach a label or tag to each and every package, barrel or bag of said commercial fertilizer, so sold or offered for sale, showing the number of net pounds of fertilizer in said package, the name, the brand and trade mark under which said fertilizer was sold, and the name and address of the manufacturer thereof, and the chemical analysis of such fertilizer, stating the minimum percentage of ammonia and the source from which such ammonia was derived, the minimum

percentage of potash soluble in water, the minimum percentage of available phosphoric acid, and the minimum percentage of insoluble phosphoric acid, the maximum percentage of chlorine contained therein, and the materials from which the said fertilizer was compounded.

"(b) That after the said 15th day of October, 1912, and during the winter of 1912 and 1913, the defendant delivered to the plaintiffs thirty-five tons of fertilizing material in St. Johns County, Florida, and to each package thereof was attached a tag upon which the following representations, statement, guarantee and analysis was given and made:

"100 POUNDS

"HASTINGS MEAL MIXTURE.

"Guaranteed Analysis.

"Moisture at 212 degrees Fahrenheit, not
exceeding _____10     per cent.
Available Phosphoric Acid, not less than_ 7     per cent.
Ammonia, Actual and Potential, not less
than _____ 4     per cent.
Derived from Blood and Bone and
C. S. Meal.
Potash (K2O), water soluble, not less than 7½  per cent.
Chlorine, not exceeding _____ 1     per cent.
Made from H. G. Blood and Bone, Bright
Cotton Seed Meal, H. G. Acid Phosphate, H. G. Potash.

"Manufactured by

"INDEPENDENT FERTILIZER COMPANY,
JACKSONVILLE, FLORIDA.

"(c) And the plaintiff says that the amount demanded by the defendant from the plaintiff for said fertilizing material so purchased was $1,050.00.

"(d) That the plaintiffs are now and were at the time of the purchase of said fertilizer citizens of the State of Florida, that they purchased said fertilizing material for their own use, and that at the time of the sale and delivery of said fertilizing material, the defendant was engaged in the business of manufacturing and selling fertilizing material in the State of Florida; and that on or about the 6th day of March, A. D. 1914, the plaintiffs, through Grady H. Stevens, after receiving said fertilizing material from the defendant as aforesaid, under the said guaranteed analysis as given above, did submit a fair sample of said fertilizing material to the Commissioner of Agriculture of the State of Florida for analysis; that said sample so submitted was secured in the presence of two disinterested persons, and in the presence of said disinterested persons was securely bottled, corked and sealed, and that said sample so securely bottled, corked and sealed, was in the presence of said disinterested persons, placed in the hands of a disinterested person to be delivered by him for these plaintiffs to the Commissioner of Agriculture of the State of Florida, and that the sample so delivered to said disinterested person was delivered to the Commissioner of Agriculture of the State of Florida for the plaintiffs; that the Commissioner of Agriculture of the State of Florida, did on or about the 10th day of March, 1914, require the State Chemist of the State of Florida to analyze the said sample of fertilizer so taken and delivered as aforesaid.

"(e) And that such analysis was made by the State Chemist of the State of Florida, on or about the 13th day of April, 1914, and a certificate of said analysis was furnished by said State Chemist to the plaintiffs, which said certificate is hereto attached and made a part of this declaration as if herein set forth in full.

"(f) That upon said certificate of analysis so being furnished as aforesaid, the plaintiffs found that the said fertilizing material was deficient in certain of its constituent elements, that is to say, that said fertilizer so sold and delivered to the plaintiffs did not contain the percentage of Available Phosphoric Acid, which said tag and guaranteed analysis guaranteed said fertilizing material to contain. And that it was adulterated in this, that it contained a greater percentage of Chlorine than the maximum percentage on said tag guaranteed analysis, and so the plaintiffs say that they discovered from said analysis so made that they had been defrauded as hereinabove specified.

"Wherefore the plaintiffs say that the defendant by reason of the facts stated herein, became, was, and still is indebted to the plaintiffs in a sum of money equal to twice the amount demanded by the defendant for said fertilizing material, to-wit: $2,100.00.

"Wherefore the plaintiffs sue the defendant and claim damages in the sum of $4,500.00.

"And for a second count plaintiffs aver all of the averments contained and stated in paragraphs numbered (a), (b), (c), (d), and (e), of the first count of this declaration and say that upon said certificate being so furnished as aforesaid, plaintiffs found that said fertilizing material so sold under said guaranteed analysis was deficient in certain of its constituent elements, that is to say it did not contain the percentage of Available Phosphoric Acid which said tag and guaranteed analysis guaranteed said fertilizing material to contain.

"And these plaintiffs say that they discovered from said analysis so made and furnished as aforesaid that they had been defrauded by reason of the deficiencies hereinabove specified.

VOL. 73, JANUARY TERM, 1917.    1055

Stevens et al. v. Independent Fertz. Co.—Opinion of Court.

"Wherefore the plaintiffs say that the defendant by reason of the facts stated herein, became, was and still is indebted to the plaintiffs in a sum of money equal to twice the amount demanded by the defendant for said fertilizing material, to-wit: $2,100.00.

"And plaintiffs claim damages in the sum of $4,500.00.

"And for a third count plaintiffs aver all of the averments contained and stated in paragraphs numbered (a), (b), (c), (d), and (e) of the first count of this declaration and say that upon said certificate being so furnished as aforesaid, plaintiffs found that said material so sold under said guaranteed analysis was adulterated in that it contained a greater percentage of Chlorine than it was represented to contain on the guaranteed analysis attached to each package thereof.

"And these plaintiffs say that they discovered from said analysis so made and furnished that they had been defrauded by reason of the adulteration hereinabove specified.

"Wherefore the plaintiffs say that the defendant by reason of the facts stated herein, became, was and still is indebted to the plaintiffs in a sum of money equal to twice the amount demanded by the defendant for said fertilizing material, to-wit: $2,100.00.

"Wherefore the plaintiffs sue the defendant and claim damages in the sum of $4,500.00."

As counsel for the plaintiff in error state in their brief that "the fourth count we concede was bad upon the ground that it was duplicitous," such fourth count will not be set out here.

In sustaining a demurrer to the first three counts the trial court stated that it was upon the grounds that the declaration "does not set forth facts to support the conclusion alleged that the plaintiff was defrauded" and

upon grounds that the statute does not allow separate causes of action for each adulteration or deficiency that may be found in the fertilizer. The order sustaining the demurrer to the declaration expressly states that the court did not pass upon the grounds of the demurrer that challenge the constitutionality of the statute, sections 1271 and 1272 of the General Statutes under which the action is brought.

Upon the plaintiffs announcing that they "will abide by their declaration," a final judgment on the demurrer was rendered for the defendant, and the plaintiffs took writ of error.

The sections of the statute referred to are as follows:

"Any person purchasing any fertilizer from any manufacturer or vendor in this State for his own use, such person being a citizen of this State, may submit fair samples of said fertilizer to the Commissioner of Agriculture for analysis. But in order to protect the manufacturer or vendor from the submission of analysis of spurious samples, the person selecting the same shall do so in the presence of two or more disinterested persons, which samples shall be taken from one or more packages and bottled, corked and sealed in the presence of said witnesses, and this sample package or bottle placed in the hands of a disinterested person, who shall forward the same, at the expense of the purchaser, to the Commissioner of Agriculture when the person so desires; and upon the receipt by him of any such sample packages, the Commissioner of Agriculture is hereby authorized to require the State Chemist to analyze the same, and he shall return to such purchaser or purchasers a certificate or certificates of analysis. The certificate shall in all cases set forth the component parts of said fertilizers, with their respective qualities, date of analysis and name or

names of persons submitting the samples, and to be signed by the State Chemist, who is hereby required to keep an accurate account of the same; and the said certificate or record, when verified by the affidavit of the State Chemist, shall be competent evidence in any court of law or equity in this State.

"Any person purchasing any fertilizer or fertilizing materials from any manufacturer or vendor who shall upon analysis by the State Chemist discover that he has been defrauded by reason of adulteration or deficiencies of constituent elements, either in quality or quantity, in the fertilizing materials so purchased, shall recover in any action he may institute, upon proof of the fact, twice the amount paid to or demanded by the manufacturer or vendor for the fertilizer or fertilizing material so purchased. But in all cases where the vendor is an agent for the manufacturer, or sub-agent of such agent, the judgment of the court shall be rendered against the manufacturer. In case any purchase be made of any manufacturer or agent of any person or persons residing out of the State of Florida, manufacturing, compounding or furnishing for sale any such commercial manure or manufactured fertilizer, cotton seed meal, castor pomace, tobacco stems, tobacco dust or tobacco meal, the purchaser thereof, may, at his option, proceed by attachment as now provided by law in case of non-resident and absconding debtors, against any such property, rights or credits of any person or persons selling, manufacturing, compounding or furnishing said manures or fertilizers when such property, rights or credits can be found within the limits of the State." Sections 1271 and 1272 General Statutes, 1906, Florida Compiled Laws, 1914.

The statute gives a right of action to any person purchasing any fertilizer to recover "twice the amount paid

\* \* \*  or 'demanded" for fertilizer "upon proof of the fact" that the purchaser "upon an analysis by the State Chemist" discovers "that he has been defrauded by reason of adulteration or deficiencies of constitutent elements, either in quality or quantity, in the fertilizing materials."   While the statute also makes the certificate of the analysis signed by the State Chemist and vertified by his affidavit "competent evidence in any court of law or equity in this State," the statute does not afford a form or rule of pleading.  It is therefore incumbent upon the plaintiff in an action brought under the statute to appropriately state all the facts that are essential to a recovery. As the recovery allowed is in the nature of a penalty, the allegations of the declaration should fully comply with the statute and with the controlling rules of pleading that are applicable in such cases.   It is not sufficient that a mere conclusion be alleged in the language of the statute when the statute clearly contemplates that the facts constituting the wrong shall be duly stated.   It is alleged that the fertilizer was delivered "during the winter of 1912 and 1913" and that the analysis was made by the State Chemist in April, 1914, and that upon the certificate of analysis furnished by the State Chemist, "the plaintiffs found that the said fertilizing material was deficient in" that it "did not contain the percentage of available phosphoric acid which said tag and guaranteed analysis guaranteed said fertilizing material to contain."   There is a somewhat similar allegation as to adulteration.   The terms of the statute in giving the special right of action to "any person purchasing" fertilizer clearly contemplate that the test shall be made with at least some degree of promptness after the delivery of the fertilizer and that more than one sample shall be taken when the quantity of fertilizer purchased makes it expedient to have plural

samples to secure a fair test.   In this case the analysis was made on one sample from thirty-five tons of fertilizer and after more than a year from the delivery; and there is no allegation that the constituent elements of the fertilizer were not at the time of the delivery substantially as stated in the guaranteed analysis on the tag.   Nor is there an allegation that the fertilizer was in fact different or adulterated in its constituent elements.   An allegation that upon the certificate of analysis the plaintiffs found it to be deficient and adulterated is not a positive and direct allegation of a fact that is essential to a recovery.   While the guaranteed analysis set out in the declaration and the certificate of analysis attached as a part of the pleading show substantial differences as to statements of the constituent elements of the fertilizer, such a showing does not dispense with essential allegations in stating a cause of action under the right conferred by the statute.   If the plaintiffs "have been defrauded, by reason of adulteration or deficiencies of constituent elements,   *   *   *   in the fertilizing materials so purchased" the facts and circumstances constituting the fraud should be directly and positively alleged, and the injury to the plaintiffs should be made to appear.   And the allegations as to the adulterations and deficiencies should have reference approximately at least to the time of delivery of the fertilizers. The guaranteed analysis relates to the constituent elements of the fertilizer at the time of its delivery.   While the manufacturers and vendors of fertilizers should be held to a compliance with the obligations imposed upon them by law, they have a right to demand that a cause of action be stated in due course of law against them before they are required to take issue on the facts alleged.

It is not proper to here discuss the constitutionality of the statute, since the declaration is insufficient to state a

cause of action as held by the trial court, and the validity of the statute was not adjudicated by the court in sustaining the demurrer to the declaration. Lippman v. State, 72 Fla. 428, 73 South. Rep. 357.

Affirmed.

BROWNE, C. J., and TAYLOR, SHACKLEFORD and ELLIS, JJ., concur.