T. F. ADAMS, *Plaintiff in Error*, v. THE AMERICAN AGRICULTURAL CHEMICAL COMPANY, A CORPORATION, *Defendant in Error*.

## Opinion Filed August 18, 1919.

1. Ordinarily if a trial court makes a correct ruling, but assigns an incorrect reason therefor, the appellate court, being concerned with the result and not with the reason, will not reverse the ruling; likewise if a cause can be fully disposed of without adjudicating constitutional questions raised therein, the courts will generally ignore such questions and dispose of the case on other grounds; but where a trial court, in disregard of the latter rule, sustains a demurrer and enters final judgment on constitutional grounds, not passing upon other questions raised therein, an appellate court will be confined to a consideration of questions passed upon by the trial court and will not determine questions raised by the demurrer upon which the trial court did not pass.

2. The statutes with reference to amendment of judicial pleadings and proceedings were designed to enable a pleader to state a cause of action, if he has one, and courts should aim to dispose of causes upon their merits and not by the manipulation of legal principles.

3. Section 1272 General Statutes of Florida gives to "any person purchasing any fertilizer or fertilizing material from any manufacturer or vendor, who shall * * * discover that he has been defrauded by reason of adulteration or deficiencies of constituent elements, * * * in the fertilizing material so purchased" a right of action against the manufacturer or vendor, and the right thereby given is not limited to those who discover such fraud "upon an analysis by the State Chemist."

4. Section 1271 General Statutes of Florida provides a method by which the user of fertilizer, if he be a citizen of this State, may determine whether his fertilizer measures up to

the guaranteed analysis, and allows him to use the certificate of the State Chemist as *prima facie* evidence in any suit brought under Section 1272, but such certificate while competent is by no means exclusive evidence as to the real analysis, the State Chemist being subject to the ordinary rules of cross-examination and contradiction.

5. The cause of action given by Section 1272 lies in fraud and the declaration should be based upon the fact of the fraud and not upon the analysis by the State Chemist, such analysis being evidence only of the real cause of action, to-wit, fraud.

6. The primary purpose of Section 1272 is to afford compensation to the purchaser and user of fertilizer for his probable though uncertain loss resulting from the use of inferior fertilizer. The measure of recovery is in the nature of liquidated damages.

7 Sections 1271 and 1272 General Statutes of Florida do not appear from the facts presented, to deprive the defendant of property without due process of law nor to deny to it (a corporation) the equal protection of the law contrary to the State or Federal constitutions.

8. The requirements of due process of law and of equal protection of the laws are satisfied if there is no unauthorized and merely arbitrary exercise of the powers of government to the detriment of the people or some of them, and inasmuch as the statutory damages of double the price paid for the fertilizer, are not shown to be unjust, unreasonable nor arbitrary in this case and inasmuch as the statute applies alike to "any manufacturer or vendor" of fertilizer, the constiutional rights of the defendant do not appear to have been violated.

9. A corporation is not a citizen within the "privileges and immunities" provisions of the Federal constitution.

10. One who is not himself denied some constitutional right or privilege cannot be heard to raise constitutional questions on behalf of some other person who may at some future time be affected.

A Writ of Error to the Circuit Court for Seminole County; Jas. W. Perkins, Judge.

Judgment reversed.

*Dickinson & Dickinson,* for Plaintiff in Error;

*Landis, Fish & Hull,* for Defendant in Error.

REAVES, Circuit Judge.—The plaintiff in error instituted suit in the Circuit Court of Seminole County against the defendant, alleging that the defendant, being engaged in the business of handling and selling commercial fertilizers, sold to the plaintiff fertilizer bearing a stated guaranteed analysis, and that upon an analysis of said fertilizer made by the State Chemist pursuant to Section 1271 of the General Statutes of Florida it was discovered that the plaintiff had been defrauded by reason of deficiencies of constituent elements in said fertilizer, and the plaintiff claimed double the price of the fertilizer as his damages, as provided by Section 1272 of the General Statutes. The defendant demurred to the declaration upon numerous grounds, thirty-two in all, among them being:

"18th: The statute upon which said declaration is based, to-wit: Sections 1271 and 1272 of the General Statutes of Florida, is illegal, unconstitutional and void.

"19th: Plaintiff has attempted to have the law upon which said declaration is based, to-wit: Sections 1271 and 1272 of the General Statutes of Florida, unconstitutionally applied in this case.

"20th: Said statute is unconstitutional for the reason

that its effect is to deprive fertilizer manufacturers and dealers of their property without due process of law."

The Circuit Judge sustained this demurrer and entered a final judgment dismissing the cause at the cost of the plaintiff, the judgment of the court specifically stating that:

"The court being of the opinion that the statute upon which said declaration is based, to-wit: Sections 1271 and 1272 of the General Statutes of the State of Florida is unconstitutional, it is therefore ordered, considered and adjudged by the court that said demurrer be, and the same is hereby sustained on constitutional grounds, to which ruling the plaintiff excepts. And the said demurrer being sustained on constitutional grounds, as aforesaid, no ruling is made upon any of the grounds of the demurrer except those raising constitutional questions."

The sections of the statute referred to are as follows:

"1271. Analysis of fertilizer purchased from Manufacturer.—Any person purchasing any fertilizer from any manufacturer or vendor in this State for his own use, such person being a citizen of this State, may submit fair samples of said fertilizer to the Commissioner of Agriculture for analysis. But in order to protect the manufacturer or vendor from the submission of analysis of spurious samples, the person selecting the same shall do so in the presence of two or more disinterested persons, which samples shall be taken from one or more packages and bottled, corked and sealed in the presence of said witnesses, and this sample package or bottle placed in the hands of a disinterested person, who shall forward the same, at the expense of the purchaser, to the Com-

missioner of Agriculture when the person so desires; and upon the receipt by him of any such sample packages, the Commissioner of Agriculture is hereby authorized to require the State Chemist to analyze the same, and he shall return to such purchaser or purchasers a certificate or certificates of analysis. The certificate shall in all cases set forth the component parts of said fertilizers, with their respective qualities, date of analysis and name or names of persons submitting the samples, and to be signed by the State Chemist, who is hereby required to keep an accurate account of the same; and the said certificate or record, when verified by the affidavit of the State Chemist, shall be competent evidence in any court of law or equity in this State."

"1272. When party is defrauded in purchasing fertilizer.—Any person purchasing any fertilizer or fertilizing materials from any manufacturer or vendor who shall upon an anlysis by the State Chemist, discover that he has been defrauded by reason of adulteration or deficiencies of constituent elements, either in quality or quantity, in the fertilizing materials so purchased, shall recover in any action he may institute, upon proof of the fact, twice the amount paid to or demanded by the manufacturer or vendor for the fertilizer or fertilizing material so purchased. But in all cases where the vendor is an agent for the manufacturer, or sub-agent of such agent, the judgment of the court shall be rendered against the manufacturer. In case any purchase be made of any manufacturer or agent of any person or persons residing out of the State of Florida, manufacturing, compounding or furnishing for sale any such commercial manure or manufactured fertilizer, cotton seed meal, castor pomace, tobacco stems, tobacco dust or tobacco meal, the pur-

chaser thereof, may, at his option, proceed by attachment as now provided by law in case of non-resident and absconding debtors, against any such property, rights or credits of any person or persons selling, manufacturing, compounding or furnishing said manures or fertilizers when such property, rights or credits can be found within the limits of the State."

The assignments of error are three in number.

First: That the court erred in sustaining the demurrer.

Second: That the court erred in holding the statute unconstitutional, and

Third: That the court erred in rendering a final judgment in favor of the defendant upon the ground that the statute is unconstitutional.

It would seem from the state of the record that the only questioned presented for consideration of this court is the constitutionality of the statutes involved. However, counsel for defendant invoke the well known rule of law that where a trial court makes a correct ruling, but assigns an incorrect reason therefor, the appellate court, being concerned with the result and not with the reason, will not reverse the ruling; and arguing that the demurrer should have been sustained on other grounds they say that even though the statute might not be held to be unconstitutional, the judgment should nevertheless be affirmed. The rule invoked is undoubtedly sound and has been applied by this court many times. Warren v. Warren, 66 Fla. 138, 63 South. Rep. 726; Sherlock v. Varn, 64 Fla. 447, 49 South. Rep. 953; Bell v. Niles, 61 Fla. 114, 55 South. Rep. 392.

There is another well recognized rule of law, however, which we should consider in connection with the fore-

going rule, namely: If a cause can be fully disposed of without adjudicating constitutional questions raised therein, the courts will generally ignore such questions and dispose of the case on other grounds. Lippman v. State, 72 Fla. 428, 73 South. Rep. 357.

In this case it is apparent that the Circuit Court did not follow this rule. Why the court chose to pass upon the constitutional question, ignoring the other questions presented by the demurrer, we are left to conjecture. It may be that counsel for defendant did not argue the other questions, or it may be that the court, realizing that the other alleged defects were amendable, saw that the question of constitutionality would have to be decided at some time, and therefore deemed it wise to dispose of it at the hearing on the particular demurrer. However this may be, it is obvious that the lower court, having seen fit to pass over the other questions and decide the question of constitutionality contrary to the usual custom in such cases and enter final judgment against the plaintiff upon that ground, if this court should now follow the usual custom by considering first the other questions presented by the demurrer, and should find that the demurrer should have been sustained upon some other ground, and should therefore affirm the judgment of the trial court under the rule invoked by defendant, the plaintiff would be out of court, and any further effort to enforce his rights, if he has any, would be barred. The statutes with reference to amendment of judicial pleadings and proceedings are most liberal, and were designed to enable a pleader by amendment to state a cause of action, if he has one, and it would be violative of the spirit of these statutes should we apply the rule invoked by defendant in this cause. To do so would be to judicial-

VOL. 78, JUNE TERM, 1919.            369

Adams v. The Am. Agri. Chem. Co.—Opinion of Court.

·ly checkmate the pleader, and to dispose of the rights of the plaintiff by the manipulation of legal principles rather than upon the merits of his claim.

Coming now to the question of the constitutionality of the statutes, we note that defendant invokes (1) the "due process of law" provisions of the State and Federal Constitutions; (2) prohibition against abridging privileges and immunities; and (3) the guaranteeing of equal protection of the law.

The material provisions of the Constitution are as follows:

"No person shall be  *  *  *  deprived of  *  *  *  property without due process of law." Sec. 12, Declaration of Rights.

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any persons within its jurisdiction the equal protection of the laws." 14th Amendment U. S. Constitution.

Counsel for defendant in their brief also refer to Section 1, Declaration of Rights, and to Section 18, Declaration of Rights.

We shall first consider whether these statutes deprive the defendant of property without due process of law. The argument is that because the statute allows the recovery of "twice the amount paid to or demanded by the manufacturer or vendor for the fertilizer or fertilizing material so purchased" it is arbitrary and unreasonable and therefore takes the defendant's property without due process of law. It is undoubtedly true that if the statute is arbitrary and unreasonable, as contended by counsel,

it violates the constitutional guarantee invoked. Before discussing whether the statute is reasonable or unreasonable, however, we think it well to state the effect of the statute as we construe it. Section 1272 gives to "any person purchasing any fertilizer or fertilizing material from any manufacturer or vendor who shall   *   *   *   discover that he has been defrauded by reason of adulteration or deficiencies of constituent elements, either in quality or quantity in the fertilizing material so purchased" a right of action against the manufacturer or vendor, and his damage is fixed by the statute at "twice the amount paid or demanded by the manufacturer or vendor for the fertilizer or fertilizing materials so purchased." The amount of recovery stated is not primarily intended to penalize the manufacturer or vendor of the fertilizers, but rather to compensate the purchaser who has been defrauded for the loss sustained by him by reason of the deficiency in the constituent elements of the fertilizer. It will be noted that the statute applies to one who purchased from a manufacturer or vendor and one who finds that he has been defrauded by a deficiency in constituent elements. We have not overlooked the phrase omitted in the above quotation from Sec. 1272, *viz*: "upon an analysis by the State Chemist," but this phrase does not restrict the right of action given by said section to those who make the discovery that they have been defrauded in the particular manner designated.   To be sure, the discovery will, in most cases, possibly in all cases, be made upon an anlysis by the State Chemist. Naturally so by reason of the facilities afforded by the statute, but the remedy is equally available to all persons who may be defrauded in the manner stated, regardless of how the fraud may be discovered. Undoubtedly the Legislature had in mind especial-

ly the protection of the user of the fertilizer, the farmer who buys it to apply to the soil.

We need hardly suggest the impracticability, and in most cases the absolute impossibility of determining with sufficient certainty to admit of recovery the damage which would be sustained by the user in such case. Considering the variety of soils in Florida, the variety of crops grown, and particularly the fruit and trucking business so extensively followed in central and south Florida, the difference in market value of various grades and qualities of fruits and vegetables, the fluctuations in prices at different periods of the marketing season, the effect of different fertilizers upon the soil, not only toward enriching the soil, but toward furnishing warmth and moisture and thereby aiding the production of early crops, it is manifest that under ordinary circumstances the grower would be utterly unable to prove what different result would have occurred had the fertilizer measured up to the guaranteed analysis; and did not the statute allow a recovery upon the basis of liquidated damages it would in most cases be impossible for the grower to recover any substantial damage in such cases. The difficulty of determining what crops might have been produced under conditions differing from those actually occurring has been considered by this court. Vaughn's Seed Store v. Stringfellow, 56 Fla. 708, 48 South. Rep. 410; Winn v. Atlantic Coast Line R. Co., 66 Fla. 604, 64 South. Rep. 232.

Section 1271 of the statute simply provides a method by which the user of the fertilizer, if he be a citizen of this State, without cost to him, may determine whether his fertilizer measures up to the guaranteed analysis, and allows him to use the certificate of the State Chemist as prima facie evidence that the fertilizer contains only the

elements found by the State Chemist in his analysis thereof. That this section relates to evidence only has been clearly indicated, in fact stated by previous decisions of this court. Collins v. Plant, 68 Fla. 338, 67 South. Rep. 80; Stevens v. Independent Fertilizer Co., 73 Fla. 1050, 75 South. Rep. 539.

From the third head note of the Collins case we quote the following:

"An analysis by the State Chemist may be made prima facie evidence of the ingredients of a bag of fertilizer."

And from the body of the opinion on page 340 we quote:

"It does provide safeguards in the identity of the sample to be analyzed, and his certificate is made at most competent but by no means exclusive evidence as to the real analysis. He is subject to the ordinary rules of cross-examination and contradiction, and the trained expert of the State may be trusted to some prima facies of accuracy and fairness."

In the Stevens case the declaration seemed to be based rather upon the analysis by the State Chemist than upon the fact of fraud by reason of the lack of constituent elements. and this court in discussing the requisites of the declaration on page 1059 said:

"And there is no allegation that the constituent elements of the fertilizer were not at the time of the delivery substantially as stated in the guaranteed analysis on the tag, nor is there an allegation that the fertilizer was in fact different or adulterated in its constituent elements. An allegation that upon the certificate of analysis the plaintiff found it to be deficient and adulterated is not a positive and direct allegation of a fact that is essential to recovery. While the guaranteed analysis set out in the

declaration and the certificate of analysis attached as a part of the pleadings show substantial differences as to the statements of the constituent elements of the fertilizer, such a showing does not dispense with the essential allegations in stating a cause of action under the right conferred by the statute. If the plaintiffs have been defrauded by reason of the adulteration or deficiencies of constituent elements in the fertilizing material so purchased, the facts and circumstances constituting the fraud should be directly and positively alleged, and the injury to the plaintiff should be made to appear."

These cases seem to clearly indicate the view of the court that the real cause of action is the fraud sustained by reason of the adulteration or deficiency of constituent elements, and that the declaration should be based upon the fact of the fraud and not upon the fact of the analysis by the State Chemist, such analysis being only prima facie evidence of the fraud.

Keeping clearly in mind the effect of the sections of the statute complained of, are they subject to the constitutional objections insisted upon? We think ont. They are not an arbitrary or unreasonable exercise of legislative power. The preparation and analysis of fertilizers requires scientific knowledge not possessed by an ordinary person, and the user must necessarily rely upon the representations of the manufacturer, both as to the character and quantity of fertilizing elements contained in the article purchased. The interest and prosperity of the State depend upon its agricultural pursuits, and the public would greatly suffer should the yield and quality of farm products be reduced by the use of inferior fertilizers.

In the enactment of statutes designed to promote the

general welfare, the legislature has a very broad power. The Supreme Court of the United States, speaking through Mr. Justice FIELD, in Minneapolis & St. L. Ry. Co. v. Beckwith, 129 U. S. 26, 32 L. Ed. 585, 9 Sup. Ct. Rep. 207, said:

"We will consider the objections of the railway company in the reverse order in which they are stated by counsel. And, first, as to the alleged conflict of the law of Iowa with the clause of the Fourteenth Amendment ordaining that no State shall deny to any person within its jurisdiction the equal protection of the laws. That clause does undoubtedly prohibit discriminating and partial legislation by any State in favor of particular persons as against others in like condition. Equality of protection implies not merely equal accessibility to the courts for the prevention or redress of wrongs and the enforcement of rights, but equal exemption with others in like condition from charges and liabilities of every kind. But the clause does not limit, nor was it designed to limit, the subjects upon which the police power of the State may be exerted. The State can now, as before, prescribe regulations for the health, good order and safety of society, and adopt such measures as will advance its interests and prosperity. And to accomplish this end special legislation must be resorted to in numerous cases, providing against accidents, disease and danger in the varied forms in which they may come. The nature and extent of such legislation will necessarily depend upon the judgment of the Legislature as to the security needed by society. When the calling, profession or business of parties is unattended with danger to others, little legisaltion will be necessary respecting it. Thus, in the purchase and sale of most articles of general use, persons may be left to exercise

their own good sense and judgment, but when the calling or profession or business is attended with danger, or requires a certain degree of scientific knowledge upon which others must rely, then legislation properly steps in to impose conditions upon its exercise. Thus, if one is engaged in the manufacture or sale of explosives or inflammable articles, or in the preparation or sale of medicinal drugs, legislation, for the security of society, may prescribe the terms on which he will be permitted to carry on the business, and the liabilities he will incur from neglect of them. The concluding clause of the first section of the Fourteenth Amendment simply requires that such legislation shall treat alike all persons brought under subjection to it. The equal protection of the law is afforded when this is accomplished."

The court was speaking of a statute imposing double damages against a railroad company for killing stock under certain circumstances and failing to pay therefor within a stated time, and the statute was upheld.

However, in addition to the interest of the general public, we think, as before stated, that the statutes now under consideration were primarily designed to compensate the defrauded purchaser for the injury suffered, and so considered are both reasonable and constitutional. Statutes conferring upon an injured party the right to recover liquidated damages where the measure of actual damages would be difficult, if not impossible, to ascertain, have often been upheld by the courts. Brady v. Daly, 175 U. S. 148, 44 L. Ed. 109, 20 Sup. Ct. Rep. 62; Chicago, B. & Q. R. Co. v. Cram. 228 U. S. 70, 57 L. Ed 734, 33 Sup. Ct. Rep. 437; Cram v. Chicago, B. & Q. R. Co., 84 Neb. 607, 122 N. W. Rep. 31, 26 L. R. A. (N. S.) 1022.

In the case of Brady v. Daly, *supra*, the U. S. Supreme

Court speaking through Mr. Justice PECKHAM, held constitutional a Federal statute which provided that any person publicly performing any dramatic composition for which a copyright had been obtained without the consent of the proprietor should be liable for damages therefor, "such damages in all cases to be assessed at such sum not less than $100.00 for the first, and $50.00 for every subsequent perfromance, as to. the court shall appear to be just." The court held this not to be a penal statute primarily, but a statute awarding liquidated damages to the party who had sustained them, saying, "the minimum amount appears to us to have been fixed because of the inherent idfficulty of always proving by satisfactory evidence what the amount is which has been actually sustianed."

And in the case of the Railroad against Cram the court sustained as against the constitutional objections urged a statute of Nebraska, which gave to the owner of live stock a liability against the railroad of ten dollars for each car for every hour by which the time of transportation exceeds the statutory limit. The Supreme Court of Nebraska had held the statute to be intended as compensation to the owner by reason of the uncertainty of proving what damage he would actually sustain in such case; in view of which holding the Supreme Court of the United States held the statute to be reasonable and constitutional.

"Courts have no power to annul a legislative enactment on the ground that it is unreasonable in its terms or in its operation, when the statute does not because of arbitrary unreasonableness conflict with the superior force of the Constitution as the higher law." Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282.

The argument here is that the statute giving to the purchaser of the fertilizer double the amount of the purchase price is arbitrary and unreasonable. To us it does not so appear. We cannot be unmindful that agriculture is becoming a greater science as the years go by, that soil analyses are more frequent, that soil experts are in greater demand, and that fertilizers are not only prepared and sold by manufacturers and dealers because of their supposed adaptability to the growing of certain crops, but that the farmers frequently have fertilizers especially prepared to suit a particular soil in order that the deficiencies of the particular soil may be supplied, or that the special needs of the particular plant life may be provided. That the grower may sustain very great damage in loss of fruit or inferiority of crop, or in injury to plant or crop by reason of deficiency in the fertilizer purchased, is obvious. Especially is this true in the growing of fruit and vegetable crops where many hundreds and sometimes thousands of dollars are realized from the product of a very small area. Manifestly we cannot say that the amount of recovery provided by the statute is arbitrary or unreasonable, and in case of doubt it would be our duty to sustain the statute because all doubts as to the constitutionality of a statute are resolved in favor of the statute. Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; McNeil v. Webeking, 66 Fla. 407, 63 South. Rep. 728; Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759.

"The requirements of due process of law and of equal protection of the laws are satisfied if there is no unauthorized and merely arbitrary exercise of the powers of government to the detriment of the people or of some of them." Davis v. Florida Power Co., *supra,* quoting from

the opinion on page 266, which cites Ozan Lumber Co. v. Union County Bat. Bank of Liberty, 207 U. S. 251, 52 L. Ed. 195, 28 Sup. Ct. Rep. 89.

We next inquire whether the statute denies to the defendant the equal protection of the laws.

"The right to equal protection of the laws is not denied by a state enactment when its provisions are not forbidden by the Constitution, and it is apparent that the same law is applicable to all persons in the State under similar circumstances and conditions." Davis v. Florida Power Co., *supra*.

We quote from the opinion in this case on page 266 as follows:

"Due process of law requires that legislative regulations shall not be a merely arbitrary exertion of the powers of government or violate the provisions and principles of fundamental law on the subject; and equal protection of the laws requires that legislative regulations shall not violate constitutional inhibitions or be merely arbitrary in applying to some persons and not to others under similar conditions."

It is manifest that the statute complained of applies alike to "any manufacturer or vendor" of fertilizer, and there is, therefore, no discrimination against the defendant. Dutton Phosphate Co. v. Priest, *supra;* Minneapolis & St. L. Ry. Co. v. Beckwith, 129 U. S. 26, 32 L. Ed. 585, 9 Sup. Ct. Rep. 207; Goldstein v. Maloney, 62 Fla. 198, 57 South. Rep. 342; Noble v. State, 68 Fla. 1, 66 South. Rep. 153; Ex parte Taylor, 68 Fla. 61, 66 South. Rep. 292.

But one question remains to be considered, namely: Whether the statute denies to the citizens of other states privileges and immunities granted to citizens of this State. This question is not properly before us for de-

termination for several reasons. In the first place, the defendant is a corporation and this constitutional guarantee does not apply to it, a corporation not being a citizen within the provisions of this constitutional guarantee. Ulmer v. First National Bank, 61. Fla. 460, 55 South. Rep. 405. And not being itself discriminated against, if there is a discrimination, it can not be heard to raise the question on behalf of some other person who may at some future time be affected. Ordelheide, Admst., etc. v. Modern Brotherhood of America, 226 Mo. 203, 125 S. W. Rep. 1105, 32 L. R. A. (N. S.) 965. We might also call attention to the fact that the statute, as we have before stated, gives the right of action to any person purchasing fertilizer, and that Section 1271 by restricting the privilege of a free analysis to citizens of this State simply gives them a means of acquiring evidence not open to citizens of other states.

We have not failed to duly consider various recent opinions of the Supreme Court of the United States in which the constituitonality of statutes imposing double damages, attorney's fees, or other excess liability, has seemed to turn upon the justice of the particular demand as established in the suit following the refusal to pay. See Kansas City Sou. Ry. Co. v. Anderson, 233 U. S. 325, 58 L. Ed. 983, 34 Sup. Ct. Rep. 599; St. Louis, I. M. & S. R. Co. v. Wynne, 224 U. S. 354, 56 L. Ed. 799, 32 Sup. Ct. Rep. 493; Chicago, M. & St. P. Ry. Co. v. Polt, 232 U S. 165, 58 L. Ed. 554, 34 Sup. Ct. Rep. 301; Yazoo & M. V. R. Co. v. Jackson Vinegar Co., 226 U. S. 217, 57 L. Ed. 193, 33 Sup. Ct. Rep. 40; Missouri Pac. R. Co. v. Tucker, 230 U. S. 340, 57 L. Ed. 1507, 33 Sup. Ct. Rep. 961.

These cases establish the law that a statute may be unconstitutional as applied to the facts in one case and con-

stitutional as applied in another. For example, in the Anderson case, *supra,* where the plaintiff sued for and recovered the full sum demanded for the killing of his stock by the railroad company, he was allowed double damages and attorney's fees, but in the Wynne case, the same identical statute was held unconstitutional because the plaintiff sued for less than he demanded and recovered less, thereby failing to establish the justice of his demand.

While these cases are not parallel with the case at bar, especially in view of the evident intent of the statutes under consideration to compensate the user of the fertilizer for his probable, though uncertain, loss, we are not to be understood as holding that facts may not arise to the application of which the statute might be unconstitutional. It is conceivable that one might buy a large quantity of fertilizer and use but little or none before discovering its deficiency in constituent elements and be able to immediately obtain other fertilizers of proper quantity and quality, or have no need to then use the inferior product, and be able to place it without loss, or the vendor might refund the purchase price, in which case no loss might be sustained, either actually or possibly. But no such facts appear in this case, and it will be time enough to pass upon them when they arise.

So far as the facts before us make it appear, the statutes assailed are a reasonable and just exercise of legislative power and do not violate the constitutional guarantees invoked.

The judgment should be reversed with directions to the Circuit Court to reinstate the cause and rule upon the grounds of the demurrer not raising constitutional questions.

PER CURIAM.—The record in this cause having been considered by tihs court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the judgment herein be and the same is hereby reversed.

TAYLOR, ELLIS AND WEST, J. J., concur.