WALKER FERTILIZER CO., INC., v. AUSTIN T. RACE, *et ux*

166 So. 283.
Opinion Filed February 26, 1936.

*Dickinson & Dickinson,* for Plaintiff in Error;

*Solon Mitchell,* for Defendant in Error.

DAVIS, J.—Anna B. Race, joined by her husband, Austin T. Race, recovered judgment in the sum of $1397.90, with costs, against Walker Fertilizer Company, Inc., in an action predicated upon Section 3815 C. G. L., 2406 R. G. S., and from such judgment defendant below has taken this writ of error.

The statute under which the suit was instituted provides that "any person purchasing any fertilizer * * * from any manufacturer or vendor thereof who shall discover * * * that he has been defrauded by reason of adulteration or deficiency of constituent elements, either in quality or quantity in the fertilizing materials so purchased amounting to two-tenths of one per cent or more in one or more elements of available plant food, shall recover in an action he may institute * * * twice the amount paid to or demanded by the manufacturer * * * for the fertilizer * * * so purchased." Section 3815 C. G. L., *supra.*

The cited statute contemplates that any person who purchases fertilizer to apply it on tillable soil for the production of crops in which he may be concerned, and who may have been defrauded in the purchase by reason of deficiencies in quantity or quality of constituent elements in

the fertilizer purchased, may bring an action to recover double damages of the kind the statute specifies. Adams v. American Agricultural Chemical Co., 78 Fla. 362, 82 Sou. Rep. 850. In this case the written order for the fertilizer involved shows that Austin T. Race, husband of the plaintiff below, Anna B. Race, gave the order for the fertilizer purchased to defendant, Walker Fertilizer Company, that he paid the bill himself, but that the fertilizer so purchased was procured by the husband and used by his direction on a grove owned at that time by Anna B. Race, his wife. Testimony given at the trial, which was read into the record of this case, indicates that although Race bought the fertilizer, that he so purchased it for his wife's grove which, under Section 5867 C. G. L., 3948 R. G. S., he was entitled to manage as his wife's agent in the premises.

While the remedy allowed "purchasers" of fertilizer in this state for redress of frauds or deficiencies in the chemical analysis of the fertilizer purchased, as provided for in Section 3815, C. G. L., *supra,* does not confer any statutory right of action in persons not actual "purchasers" within the contemplation of the statute, the remedy nevertheless may properly be invoked in an action instituted by a wife, joined by her husband as plaintiff, whenever it appears that although the husband actually purchased the fertilizer and paid for it, that he did so for the purpose of having it applied on and used for the enrichment of the soil of property of his wife which, under Section 5867 C G. L., presumptively remained in the care and management of the husband for his wife's benefit.

We hold therefore that the present action was properly instituted and carried to conclusion in a suit at law brought by Anna B. Race, joined by Austin T. Race, as her husband, and that if there was a variance between the sum-

mons *ad respondendum* and the amended declaration in that the original summons and declaration were entitled "Austin T. Race and wife, Anna B. Race," instead of "Anna B. Race, joined by her husband, Austin T. Race," as laid in the amended declaration, that the variance was not fatal in view of Sections 4206, 4207 C. G. L., 2566, 2567 R. G. S., McMillon v. Harrison, 66 Fla. 200, 63 Sou. Rep. 427, 49 L. R. A. (N. S.) 946.

A summons *ad respondendum* is the process issuing in a civil case at law modifying the defendant or defendants therein named that he, she or they must appear on a day designated and thereupon make answer to the plaintiff's statement of his cause of action. Sections 4230-4235 C. G. L., 2590-2595 R. G. S. While it should in all cases correctly state the Christian and surnames of the parties plaintiff, as well as set forth the correct Christian and surnames of the parties defendant, the liberal rule prevailing in this state as to amendments in cases at law, is sufficient to warrant a trial court in rejecting as immaterial objections to purely formal changes in the designation or names of the parties plaintiff in the case, where it is clear that no prejudice can result to the defendant by reason of the amendment or alteration at the time it is made.

The amended declaration in this case was filed in the name of Anna B. Race, joined by her husband, Austin T. Race, and by Austin T. Race, individually as plaintiffs. The Walker Fertilizer Company, Inc., was therein designated as the sole defendant, as had been theretofore done in the praecipe for summons *ad respondendum* and in the summons issued pursuant thereto. The judgment, however, was entered in the name of Anna B. Race, joined by Austin T. Race, her husband, no mention of Austin T. Race, individually, as a plaintiff being made to appear. The sub-

sequent dropping from the proceedings of the name of Austin T. Race, as a designated plaintiff individually suing as such in addition to his character as a party plaintiff by reason of his being the husband of Anna B. Race, the real plaintiff, is in legal effect nothing more than an amendment of parties permissible under the statute as to parties plaintiff, and is therefore not cause for reversal absent some showing of prejudice to the defendant occasioned thereby.

The amended declaration alleged substantially that on October 6, 1931, plaintiffs purchased from defendants 38,800 pounds of commercial fertilizer designated as "Special Mixture No. 401," at the price of $733.90, less tare of $6.00 per ton, or $107.40, making the net purchase price $626.50, which plaintiffs paid on October 14, 1931, after deducting therefrom the sum of $62.50, as discount for prompt payment and use of plaintiffs' services and truck in hauling said fertilizer; that it was defendant's duty to have a tag attached to each bag of fertilizer showing the brand of fertilizer, the name and address of the manufacturer or jobber, the net weight of the bag in ponuds, and a detailed chemical analysis of the contents thereof; that between October 8th and 12th, 1931, defendant delivered to plaintiffs 180 bags of fertilizer containing 200 pounds each, to each of which was attached a tag, upon which were found representation and guaranty as to its analysis, as in Exhibit X made a part of this declaration; that plaintiffs were and are citizens of the State of Florida; that on or about October 12, 1931, an authorized inspector of fertilizer of the State of Florida drew a fair sample of said fertilizer, as provided by law and the Rules of the Commissioner of Agriculture, from at least 10% of the bags, drawing from each bag approximately a pint or pound of the contents, which was submitted to the State Chemist as

provided by law and said rules of the Commissioner of Agriculture; that thereafter the State Chemist caused an Assistant State Chemist or Chemists to analyze said sample and forwarded to the Commissioner a certificate showing the findings of said analysis, a copy of which is attached to the declaration as Exhibit A; that the fertilizer was used on a citrus grove in Polk County, in the fruit from which and the proceeds from the sale of which each were interested as beneficial owners; that said fertilizer at the time of delivery was deficient more than two-tenths of one per cent. in one or more constituent elements of available plant food as compared with the guaranty and analysis set forth on the tags attached to each bag of fertilizer, being deficient about fifty-three one-hundredths of one per cent. in water soluble potash and containing substantially two and fifteen hundredths more insoluble phosphoric acid than was represented and guaranteed by defendant; that the rules of the Commissioner of Agriculture in regard to inspection, sampling, analysis and certification of analysis in force at the present time are attached to the declaration as Exhibit B; that plaintiffs have been defrauded in the sale of said fertilizer and defendant is liable to them in liquidated damages in double the amount paid or charged therefor, totalling $1253.00, with interest at 8% from date of delivery of said fertilizer, wherefore plaintiffs claim $2,000.00 damages.

Pleas filed by the defendant, upon which it ultimately went to trial, put in issue (1) the alleged fact of plaintiff's purchase of the fertilizer as alleged; (2) the allegation of adulteration or deficiency in its contents;. (3) refuted the taking of samples and the making of analysis thereof in the manner and according to the procedure prescribed by law as alleged, and (4) denied the accuracy of the analysis as

made as being sufficient in any respect to establish a result entitling the plaintiffs to statutory damages, as claimed.

Section 3814 C. G. L., 2405 R. G. S., provides for an analysis of fertilizer purchased from manufacturers, jobbers or vendors. Under the section a disinterested person, in the presence of a second disinterested person and the fertilizer purchaser, is required to draw a sample for analysis in the manner laid down in that section and when samples so drawn have been taken they are provided to be forwarded in the statutory manner to the State Chemist who is required to analyze same in accordance with the methods of Association of Official Agricultural Chemists and make out and forward to the purchaser of same a duly executed certificate of analysis for each sample analyzed.

In this case the alleged samples are not shown to have been drawn in the manner prescribed by Section 3814 C. G. L., *supra,* but appear to have been taken by an officially authorized fertilizer inspector of the State of Florida employed as such under the supervision of the Commissioner of Agriculture pursuant to Sections 220-228 C. G. L., Chapter 10149, Acts 1926, as amended by Chapter 11998, Acts 1927. Neither were same drawn at all by the inspector until after the fertilizer had passed into the hands of the purchaser after being sold by the distributor.

Our statutes provide alternative methods by which samples of fertilizers, sought for analysis by the State Chemist for the purpose of detecting deficiencies in quantity or quality may be drawn from the original packages or bags. But these methods are exclusive, the one of the other.

Under Section 3814 C. G. L., 2405 R. G. S., a purchaser may take a sample of the fertilizer purchased by him, by following strictly the terms and limitations of that section. This section contemplates a method of procedure to apply

·to every instance where a sample is drawn from a package or bag of fertilizer after it has been sold and delivered to the purchaser. Under regulation No. 3 of the Commissioner of Agriculture such samples must be drawn and transmitted to the State Chemist within sixty days after delivery to the purchaser.

The alternative method of taking samples is to be found in those statutes (Sections 220-228 C. G. L., and Acts supplementary to and amendatory thereof) which impose upon the designated state inspectors the duty of sampling fertilizers for the purpose of detecting violations of the law as to the guaarnteed analysis set forth on the tags of fertilizers kept or offered for sale to the public. The statutes prescribing privileges and duties with reference to the inspection and sampling of fertilizers that are provided by ·law to be performed or exercised by state inspectors, as such, contemplate that sampling òf fertilizer by state inspectors shall be made while the fertilizer is being offered for sale, not after sale and delivery has been made. In other .words, official sampling of fertilizers by inspectors must be done by the inspector at the place of business of the seller ·before the fertilizer has left the vendor's custody or control. Otherwise the detailed method of procedure laid down by Section 3814 C. G. L., 2405 R. G. S., must be followed to be effective, even when the same is taken by an authorized state inspector.

An authorized state inspector may draw a sample of fertilizer and forward it to the State Chemist for analysis after fertilizer has been sold and delivered to a purchaser, but when he does so, he does it as a disinterested person acting under Section 3814 C. G. L., 2405 R. G. S., and not by virtue of any peculiar authority vested in him as an in-·spector. And in such cases there must be present a second

disinterested person in addition to the purchaser, to make such sample conformable to law.

The samples of fertilizer involved in this case do not appear to have been taken according to either of the authorized alternative methods provided by law for effectuating same. While it is shown that samples were taken by a duly authorized state Fertilizer Inspector, yet the time when such samples were taken was a time after the fertilizer had already been sold and delivered to the plaintiffs. It is not made to appear that Section 3814 C. G. L., *supra,* was in any of its mandatory particulars observed in the taking and forwarding to the State Chemist of the samples upon which this suit was predicated, although had it been so made to appear, the evidence of the analysis itself, as made of the samples that were taken, was sufficient to warrant a jury in finding that the fertilizer was below the statutory standard of its analysis when analyzed according to any reliable method of analysis of same.

To warrant recovery, plaintiff below was bound to prove the essential facts of her complaint which the pleas denied. One of the facts alleged, and so required to be proved, was that the fertilizer was deficient in qualitative analysis as to water soluble potash when sampled, and analyzed by the State Chemist, according to law.

The certificate of the State Chemist showing an analysis of fertilizers made by him according to law is *prima facie* evidence of the ingredients of the fertilizers analyzed and certified to by him. Although not conclusive as evidence, it is nevertheless sufficient to sustain a recovery until some competent countervailing evidence is introduced sufficient to overcome the weight and legal effect of the certificate as being *per se* proof of the truth of its recitals. Collins v. Plant, 68 Fla. 338, 67 Sou. Rep. 80; Fleischer v. Virginia-

Carolina Chemical Co., 82 Fla. 50, 89 Sou. Rep. 401; Adams v. American Agricultural Chemical Co., 78 Fla. 362, 82 Sou. Rep. 850; Section 3815 C. G. L., 2406 R. G. S.

Since the certificate of analysis relied on in this case was not arrived at according to any of the authorized sampling procedures provided for by the statutes of this state, its effect as evidence sufficient to sustain plaintiffs' verdict was overcome, and the trial court should have awarded a new trial when complaint on that ground was asserted in the motion requesting that the verdict be set aside.

The Court gave the following charge to the jury:

"If you believe from the evidence that the method of analysis of the sample of fertilizer involved in this case for potash content used by the Assistant State Chemist in making his analysis was, at the time the fertilizer involved in this case was sold, the method generally accepted and approved by the Association of Agricultural Chemists, you will bring in your verdict for the plaintiffs."

Such instruction was bad, because it was equivalent to directing a verdict in favor of plaintiff, by telling them that since the State Chemist's certificate had been introduced in evidence, and his results had been obtained by a method of analysis generally accepted as a proper method of analysis, that other conflicting evidence need not be considered although it might demonstrate a lack of accuracy in that made by the State Chemist. A certificate of analysis made by the State Chemist is merely *prima facie* evidence of the constituent elements of available plant food contained in the fertilizer, and other evidence contradictory of its verity should not, as a matter of law, be denied consideration by the trial jury.

The Court charged the jury that if the plaintiffs were entitled to a verdict, they should recover twice the amount

paid for the fertilizer, to-wit: $625.50. This was not error because the declaration claimed $625.50 (of which amount $62.50 was a cash discount and delivery service charge) was paid for the fertilizer. Plaintiffs were warranted in recovering double the $625.50 paid or "demanded" for the fertilizer, as its purchase price.

Interest was awarded on the amount allowed from the date of filing the praecipe at the rate of 6%. There was no harm to defendant in this ruling, because plaintiff was entitled to interest on the amount involved at 8%, the ordinary legal rate. Chapter 16051, Acts of 1933, reduced the interest on judgments and decrees to 6%, but did not reduce the allowable rate of interest from 8% to 6% prior to judgment. The Courts should still award 8% as legal interest allowable on claims carrying recoverable legal interest prior to date of judgment. Only interest on the judgment after it is rendered is reduced to 6% by the statute of 1933 just cited.

Where a necessary party to an appeal or writ of error has not been made such party, and has not voluntarily appeared in the appellate court, the appeal or writ of error will be dismissed. See Gifford v. Plummer, 73 Fla. 1065, 75 Sou. Rep. 536; Bate v. Cook, 89 Fla. 40, 103 Sou. Rep. 126; Armour Fertilizer Works v. N. G. Wade Inv. Co., 90 Fla. 403, 105 Sou. Rep. 819. If all appellees or defendants in error are not included in the appeal or writ of error as recorded, the appeal or writ of error will be dismissed, unless such persons voluntarily appear. Hay v. Isetts, 98 Fla. 1026, 125 Sou. Rep. 237, followed in Snyder v. Allen, 100 Fla. 733, 129 Sou. Rep. 870. Parties cannot be added after the time limited for taking appeals or bringing proceedings in error has expired. Cornell v. Franklin, 40 Fla. 149, 23 Sou. Rep. 589, 74 A. S. R. 131; State v. Canfield,

40 Fla. 36, 23 Sou. Rep. 591, 42 L. R. A. 72; National Bank of Lancaster v. Newheart, 41 Fla. 470, 27 Sou. Rep. 297.

But when a writ of error brings in and names as parties to it all of the parties in whose favor the judgment was rendered, designating them in the manner they are found designated in the final judgment, and leaves out no party affected by the judgment, which is the case here, a motion to dismiss the writ of error will be denied.

Reversed and remanded.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.