**J. A. DIGIROGIO v. RUTH PATTISON DIGIROGIO, the HOLY NAME ACADAMY, a corporation.**

13 So. (2nd) 596                                    January Term, 1943
May 18, 1943                                                    En Banc

*Giles & Gurney* and *Alfred P. Marshall,* for appellant.

*Dayton, Dayton & Dayton,* for appellee.

ADAMS, J.:

Appellee proceeded by habeas corpus to gain the custody of her minor son, age six.

She predicated her right to custody upon a separation agreement entered into between her and appellant, the father of the child. She also alleged her fitness and the father's want of fitness to have custody of the child. On this allegation, appellant's return joined issue. As to the agreement appellant admitted its execution but repudiated it on the basis that after making the agreement he learned of his wife's infidelity.

These parties were married in the State of California. They had marital differences which resulted in an interlocutory divorce decree in California. Before the decree became final, a reconciliation was effected. An agreement was made relative to custody of this child and other matters. Immediately after this agrement, appellee left for Reno, Nevada, to

establish residence and procure a divorce. While she was away, appellant discovered some documents which he said convinced him, for the first time, that his wife had a clandestine love affair which justified him in rescinding the agreement. He notified her of his intentions whereupon she returned to California and filed an action for divorce and custody of the child. Before process was served appellant took the child and came to Florida.

At the beginning of the hearing the trial judge said, addressing appellant, "Well, I think it is up to you to show if you brought the child from California to Florida properly. I think the first move is yours."

Thereupon appellant was examined and cross examined. At the conclusion of appellant's testimony the following occurred between appellant's counsel and the trial judge:

"The Court: It looks to me that this is a question where, as I see it it is to the best interest of the child that the child go back to California. There may be conditions that that court out there could best go into. I think the interest of the child requires it to go back to the place where it came from.

"Mr. Gurney: Would your Honor also let the record show that we have other testimony to offer in connection with the allegations of the answer, because we are not through. I don't want to be under the impression here that we had rested the case, because we had not.

"The Court: Yes, but this is on a different point from the one I am deciding it on.

"Mr. Gurney: Ours is on the point of the fitness of the petitioner and also the welfare of the child and its custody.

"The Court: Yes, and I think those are things that the Court out in California should litigate and determine.

"Mr. Gurney: Well, then it will not be necessary for us to make any formal proffer. I will just state that I would like to make the proffer of such evidence and let the record show that and then we will be through.

"The Court: All right, sir."

Thereupon a judgment was entered awarding custody to appellee with permission to return to California and without prejudice to either party to litigate the matter in the courts

of California. Throughout the limited proceeding in the lower court, which cannot be termed a trial because testimony was not allowed on the issues, much emphasis was placed on the parties' residence in California. This, to our mind, is one of the immaterial factors which led the trial court into error. The law is and has been from time immemorial that each state is not only empowered, but is charged with the duty, to regulate the custody of infants within its borders. This is true even though the parents may be residents of another state. Woodworth v. Spring, 4 Allen (Mass.) 321, 323; White v. White, 77 N. H. 26, 86 Atl. 353; Hanrahan v. Sears, 72 N. H. 71, 72, 54 A. 702; Matter of Hubbard, 82 N. Y. 90, 93. For this, the residence of the child suffices, though the domicile be elsewhere. Finlay v. Finlay (New York) 148 N. E. 624, 625.

The reason for this law is to protect the incompetent where they are because it is there where the protection is needed and there alone where a judicial order may be executed.

The judgment entered here was evidently entered on the theory that the court had the jurisdiction of the res which was the child but the court in the exercise of its discretion declined to fully exercise such jurisdiction because in the opinion of the court the ends of justice would be better served by leaving it to the California courts to pass on. The question then arises what happens in case the child is not returned to California by the mother? Suppose the mother remains in Florida or returns to Nevada. The California court has no jurisdiction now of the child or the father in any case. If the California court should attempt to exercise jurisdiction it would find virtually the same case we had in State ex rel. v. Clark, 148 Fla. 452, 4 So. (2nd) 517, where the mother of the children wrongfully took them to Georgia and returned to Florida to successfully show we were without jurisdiction. The issues were clearly made in this case upon the mother's suit filed. May it be said that she may have a judgment exactly as she has prayed without offering one syllable of evidence or otherwise litigating a single issue made in a case filed by her. The trial court seemingly declined to exercise

his lawful jurisdiction but in fact actually exercised it by ordering the infant taken from the father and delivered to the mother, with permission to take it to California. Assuming the court had the power, which we do not pass upon, there was an absence of direction to return to California. The bad faith of the parent in moving the child from one state to another is not a determining factor as to whether the court will exercise its jurisdiction over the child. Barnett v. Blakley (Iowa) 209 N. W. 412. The child must be in the State of Florida for the courts of this State to exercise jurisdiction. When jurisdiction vests, then the incompetent child is owed a duty by the court to determine from evidence where it should be placed for its own best interest. Dorman v. Friendly, 146 Fla. 732, 1 So. (2nd) 734; State ex rel. v. Clark, supra.

The court should not be deterred in the discharge of this duty by what it might be convinced as a bad motive of one parent in removing the child from a sister state. Williamson v. Osenton, 58 L. Ed. 758.

In People v. Torrance (Col) 27 Pac. (2nd) 1038, 1039 the court said:

"The court fixed a new status for the children, not on any showing that their welfare required a change of custody, but as a part of the punishment of respondent for contempt and to maintain the authority of the court whose order had been violated. Is the interest and welfare of the children to be thus determined and possibly jeopardized on account of parental indifference to an order prohibiting removal from the state? We think not . . .

"Violation of the removal order did not of itself defeat her custody. It subjected her to punishment for contempt. When she domiciled in Colorado, it became the domicile of the children."

The agreement will not preclude the father from claiming the custody of the child. State ex rel. Airston v. Bollinger, et al., 123 Fla. 88, 101 So. 112; Hernandez, et al., v. Thomas, 50 Fla. 522, 39 So. 641.

The judgment is reversed for further proceedings not inconsistent with this opinion.

Reversed.

BUFORD, C. J., BROWN, THOMAS and SEBRING, JJ., concur.

TERRELL and CHAPMAN, JJ., dissent.

TERRELL, J., dissenting:

I agree to the general proposition of law as stated in the opinion of Mr. Justice Adams but under the facts of this case I am not convinced that the chancellor abused his discretion. I, therefore, dissent. Mr. Justice CHAPMAN joins in this dissent.