GABE LIPPMAN, *Claimant, Appellant,* v. THE STATE OF FLORIDA, *Appellee.*

Opinion Filed Dec. 5, 1916.

1. If a cause can be fully disposed of without adjudicating constitutional questions raised therein, the courts will generally ignore such questions and dispose of the case on other grounds.

2. Where there has been a signal failure to comply with the provisions of Chapter 6513 of the Laws of Florida (Acts of 1913), requiring an information to be filed within twenty-four hours after the seizure of intoxicating liquors, which have been shipped into a county in which the sale of such liquors is prohibited by law, as well as a failure to comply with still

other provisions of such chapter, a decree ordering the for-
feiture and destruction of such liquors will be reversed.

Appeal from Circuit Court, Dade County; H. P
Branning, Judge.

Decree reversed.

*Atkinson* & *Burdine,* for Appellant;

*T. F. West,* Attorney General, and *C. O. Andrews,*
Assistant, for the State.

SHACKLEFORD, J.—The Florida Legislature, at its
session of 1913, enacted the following statute:

"CHAPTER 6513—(No. 93).

"AN ACT to Prohibit the Shipment of Spirituous,
Vinous, Malted, Fermented or Other Intoxicating Li-
quors of Any Kind, When said Liquor is Intended by
Any Person Interested Therein To Be Received, Pos-
sessed and Sold in Violation of Law From Places in
Which the Sale of Such Liquor Is Authorized by Law of
the State of Florida, to Places in Which the Sale of Such
Liquor Is Prohibited by the Laws of the State of Florida,
to Authorize the Seizure and Destruction of Such Liquor
When So Shipped, to Provide for the Seizure and De-
struction of Such Intoxicating Liquor Consigned or Ship-
ped From Without the State of Florida to Places in
Counties That Have or May Hereafter Vote Against the
Sale of Said Liquors in Accordance With the Constitu-
tion and Laws of the State of Florida, Whether in Orig-
inal Packages or Otherwise, When Said Intoxicating

Liquor So Shipped is Intended by Any Person Interested Therein To Be Received, Possessed, Sold, or in any Manner Used In Violation of Any Law or Laws of the State of Florida and Providing for the Marking and Labeling of All Liquors Shipped From One Place to Another in the State of Florida, and Prescribing Penalties for Violations of This Act, and Establishing Rules of Evidence for Proceedings Under This Act.

"*Be It Enacted by the Legislature of the State of Florida*:

"Section 1.   The shipment of spirituous, vinous, malt or fermented or other intoxicating liquors from places in this State where the sale of such liquor is authorized by law to places in Counties where the sale of such liquor is.now or may hereafter be prohibited by the Constitution or Laws of the State of Florida, for sale or resale is hereby prohibited and all such liquor shall be subject to seizure and destruction as hereinafter provided, Provided, that the shipment of such liquors in reasonable quantities to a bona fide consignee for the private use only of such consignee shall not be prohibited.

"Sec. 2.   All packages, cartons and containers, containing and holding intoxicating liquor when shipped by any person, firm, association or corporation through or by means of any common carrier shall be plainly and conspicuously labeled, marked or tagged on the outside with the name of the shipper, and the name and address of the consignee and shall have marked thereon the kind, quality and quantity of the liquor contained in said package and the words 'Intended only for the private use of _____' and family.

"Sec. 3.   Any person, firm, association or corporation, who shall deliver to any common carrier or ship any intoxicating liquor without such labeling or marking, and

any common carrier or agent of such common carrier who shall receive for shipment or who shall deliver any such package of intoxicating liquor without such label, or marking as is provided for in Section Two of this Act, shall upon conviction be fined not more than One Thousand Dollars or be Imprisoned not more than Six Months, or by both such fine and imprisonment and all such intoxicating liquor found in the possession of any common carrier or other person, after delivery to said carrier, not properly marked shall be liable to seizure and destruction.

"Sec. 4. The State of Florida hereby accepts the terms and conditions of the Act of Congress known as the Webb-Kenyon Bill, being Senate Bill No. 4043 which said Bill is entitled, An Act divesting intoxicating liquors of their interstate character in certain cases and which became a law on March 1st, 1913, and the State of Florida hereby enacts that all spirituous, vinous, malted and fermented or other intoxicating liquor of any kind shipped. into the State of Florida from any other State or Territory or District of the United States, or place non contiguous to but subject to the jurisdiction of the United States and consigned to any place, precinct or County in the State of Florida when said intoxicating liquors is intended by any person, firm, association, corporation or club, or any person interested therein to be possessed, sold or in any wise used in the original package or otherwise, in violation of the laws of the State of Florida, is hereby declared unlawful and prohibited and all of said liquors subject to seizure, forfeiture and destruction from the time of the arrival of said intoxicating liquor within the State of Florida, provided however, that the provisions of Sections One and Two shall apply to shipments from without the State.

"Sec. 5.    All intoxicating liquors shipped and found in the State of Florida in violation of Sections 1, 2, 3 and 4 of this Act and not intended solely and only for the private use of the consignee or owner, may be seized by any Sheriff or Deputy Sheriff specially authorized in writing by the Sheriff or Governor.   All such intoxicating liquor may be seized by such officers, when in the possession of any common carrier, provided, that all seizures in this Act mentioned, shall be by the Sheriffs or Deputies, in the County where the liquor is sent for consignment. All such liquor seized shall be taken by the seizing officer and by him kept in some secure place until the same is disposed of by law.   Within twenty-four hours after said seizure, the seizing officer shall file in the office of the Clerk of the Circuit Court in the County where said liquor was seized, a sworn information stating the quantity and kind of liquor seized, to whom consigned and that to the best of his information, knowledge and belief said liquor is and was intended for sale in violation of law and not for the private use only of the consignee, and a copy of said information shall be served within three days on the agent of common carrier or other person from whose possession said liquor was taken, and on the consignee of said liquor, if he be found in said County.   The owner, consignee, common carrier or any person interested in said liquor, shall within six days after service of said copy file an answer or claim for said liquor and shall demand a hearing from the Circuit Judge or Judges of the Circuit wherein said liquor was seized.

"The Circuit Judge shall hear said cause in term or in vacation and shall hear testimony in said cause and decide said cause without the intervention of a jury and shall promptly render a decree according to the evidence and if said liquor is found to be in the State of Florida

intended for sale in violation of law he shall further declare said liquor forfeited and shall order the Sheriff of said County to destroy said liquor in not less than ten days or more than fifteen days from the date of said decree. The Court shall find the value of said liquor and the owner or claimant may take an appeal as in equity causes, within fifteen days and said appeal shall, upon giving of a bond in double the amount of the value of said liquor operate as a supersedeas against the destruction of said liquor only, pending the decision of the appeal, the liquor shall remain in the custody and control of the Sheriff. In all cases of seizure of liquor under the provisions of this Act the Court shall consider the quantity of liquor in each shipment and any undue or unreasonably excessive quantity in each shipment, or particularly of spirituous liquors shall be held presumptive of intent of the owner or consignee to have such liquor in the State for an unlawful purpose and for sale and in such cases the burden of proof shall be upon the owner or claimant to show the contrary.

"Sec. 6. All common carriers and their agents shall be subject to process of the Court to produce all necessary shipping records, relative to the shipment or custody of liquors seized and any person, who shall impede, obstruct or prevent the seizure of liquors, as provided in this Act shall be upon conviction, fined not more than One Thousand Dollars or imprisoned not more than six months or both such fine and imprisonment.

"Sec. 7. This Act shall go into effect on July 1st, 1913.

"Approved May 27, 1913."

Claiming to act under the authority conferred on the sheriffs of this State by Section 5 of the foregoing Chapter, Dan Hardie, the Sheriff of Dade County, Florida,

seized 41 cases of intoxicating liquors while in the pos-
session of a common carrier at Miami, Florida, and took
the same into his custody and stored such liquors in a
certain building which was locked and sealed.   On the
26th day of May, 1916, such sheriff filed in the office of
the Clerk of the Circuit Court for Dade County 41 infor-
mations, one of which said informations is in the follow-
ing words and figures:

"Van S. S. Co., 12-28-15.

"In the Circuit Court of the
Eleventh Judicial Circuit of
Florida, in and for Dade
County.

"I, Dan Hardie, Sheriff of Dade County, Florida, do
hereby state upon oath that I have seized and now have
in a safe place certain liquors, described as follows: One
case containing the following:  Forty-eight (48) half
pint bottles of Echo Springs Whiskey.   Consigned to
N. T. Hasseltine and family, Miami, Florida, and to the
best of my information, knowledge and belief, the said
liquor is and was intended for sale in violation of law,
and not for the private use only of the consignee_____

"This information is filed in compliance with Sec-
tion Five of Chapter 6513 of the Laws of Florida 1913.
"Dan Hardie, *Sheriff of Dade County, Florida.*

"State of Florida, ⎱
                    ⎰ ss.
"County of Dade ⎰

Before me, the undersigned authority, a notary public
this day personally appeared Dan Hardie, who, being

duly sworn, deposes and says that the allegations of the above and foregoing information are true.

*"Dan Hardie.*

"Sworn to and subscribed before me this 25th day of May, A. D. 1916.

"B. HOLLY,
"Notary Public State of Florida at Large.

"My commission expires June 26th, 1919."

On the 26th day of May, A. D. 1916, the Sheriff made his return on said informations, a copy of one of which said returns is in the words and figures following:

"Mailed copy of this original to unknown named persons at Miami, Fla., whereabouts unknown. May 26, 1916.

"DAN HARDIE,
*"Sheriff."*

Various and sundry papers were filed by Gabe Lippman, claimant, including a plea in abatement, a motion to quash the information, all of which were overruled. On the 2nd day of June, 1916, the claimant filed the following answer:

"Now comes the claimant in the above cause and for answer to the informations heretofore filed, and to each and every one of the said information, says:

"1. That the liquor mentioned in each and every one of the said informations was shipped to the various persons named in the informations filed, by bill of lading, 'shippers order notify the persons named in the bill of lading.'

"2. That the petitioner and claimant is the owner of said liquor, and the consignor thereof, and that said

liquor was consigned to shippers order notify the person named in each one of the said informations.

"3.   That each package of said liquor was plainly and conspicuously marked on the outside with the name of the shipper, and the name and address of the consignee; and each and every·package of liquor had marked thereon the kind, quality, and quantity of the liquor contained in said packages, and the words 'Intended only for the private use of__.·_____ and family;' that each package of liquor had the name of the consignee inserted in the space immediately preceding the word 'and family.'

'4.   That all of said liquors was shipped in reasonable quantities, to-wit:—one case of 12 quarts, and that they were shipped on bona fide orders, to bona fide consignees, for the private use only of such consignees."

This answer was sworn to by the claimant, who on the same day filed the following claim:

"Now comes Gabe Lippman, by his Attorneys Eugene Hale, of Jacksonville, Florida, and Atkinson & Burdine, of Miami, Florida, and represent unto your honor, that heretofore, to-wit:   During the months of November and December, 1915, petitioner received from divers persons, living in Dade County, orders for intoxicating liquors, and upon receipt of said orders, he shipped to said persons, the said liquor, addressed to Miami, Florida.

"That the said names of the persons from whom the orders were received, together with the original order received by petitioner, together with Bill of Lading, showing shipment of the intoxicating liquors, together with affidavit relative thereto, is all sworn to by petitioner, and attached hereto and made a part of this petition.

"That when the intoxicating liquors arrived in Miami, the point of consignment, the same was seized by Dan Hardie, and has since been held in his custody, and

although more than ninety days have passed, no notice of any kind has been served on your petitioner, but on the other hand, the same has been held by Dan Hardie, in his custody, at some point on the Court house yard, or in the vicinity of the County jail in Miami, Dade County, Florida.

"That your petitioner shipped the liquors in good faith. That he believed then, and now believes, that each order was genuine and bona fide. That the shipment of said liquor in no way violated any of the provisions of Chapter 6513, of the Laws of Florida of the Legislature of 1913, and were not subject to seizure under the said Act. That said liquors were not paid for by the consignee, but the same remains the property of the petitioner.

"That petitioner's business is at Jacksonville, Florida, in the County of Duval, and said liquor was shipped to Miami, Florida, from said point. That said liquor was not intended by the consignees, in any case, to be used or received in violation of any law. That on each package or container, containing liquors so shipped by your petitioner as aforesaid there was marked on the outside thereof, plainly and conspicuously, the name of the shipper, the name and address of the consignees, the kind, quality and quantity of the liquor contained in the packages and the words 'Intended only for the private use of_____and family.' That in each case, the name of the consignees was filled in where the blank line appears herein.

"*Wherefore,* petitioner prays that the court will make an order in the premises, and immediately order the liquor restored to petitioner, so that the same may be reshipped by your petitioner to his own address in Jacksonville, Florida."

We omit the affidavit of the claimant, setting forth the names of the persons from whom the orders were averred to have been received, as well as the original orders and bills of ladings referred to in such claim and made a part thereof.

On the 9th day of June, 1916, was filed the following stipulation:

*"It is Hereby Stipulated and Agreed* by and between The State of Florida and Gabe Lippman, represented by Atkinson & Burdine, his attorneys, as follows:

"1.    That Gabe Lippman is a wholesale liquor dealer residing in Jacksonville, Duval County, Florida, holding Federal, State, County and Municipal Licenses; that the sale of intoxicating liquors is permitted in the County of Duval; that Dade County has voted against the sale of intoxicating liquors, and the sale of liquors is now prohibited in said county.

"2.    That the orders for intoxicating liquors purporting to be signed by the persons hereinafter named were received by Gabe Lippman, through the United States Mails, at Jacksonville, Florida, within from 24 to 36 hours after the date the said several orders respectively bear; and that by virtue of receiving said orders, the originals of which are attached to the answer and claim herein, the said Gabe Lippman, relying upon the orders and believing the same to be bona fide, immediately filled said orders, by shipping to the persons, in individual cases, the said several cases of intoxicating liquor, and that he delivered the same to the transportation company at Jacksonville, and received from said transportation company the several copies of the bills of lading which are attached to the claim and answer.

"3.    That in accordance with Section 2, of the Laws of 1913, each package containing the said intoxicating

liquor when shipped by the said Gabe Lippman was plainly and conspicuously marked on the outside with the name of the shipper, Gabe Lippman, and the name and address of each consignee, and had marked thereon the kind, quality and quantity of the liquor contained in each package, and the words 'Intended only for the private use of_____and family.' (Having inserted where the line appears the name, in each instance, of the consignee.)

"4. That the several shipments were made on the date which the said bills of lading bear, and reached Miami within the time required for transportation between the two points, or within 24 hours to 36 hours after the date of the bills of lading.

"5. That within a few hours after the arrival of the several shipments at Miami, and while the same was still in the hands of the carrier, the Sheriff of Dade County, without a warrant, and without there having been made any oath or affirmation by any person whomsoever describing the place or places to be searched, or the thing or things to be seized, seized the said liquor.

"6. That immediately upon seizing said liquor from the transportation company, the sheriff transferred the same to a building in the Court house yard, where the said liquor has since been stored.

"7. That the sheriff did not within 24 hours after seizing and taking possession of the said liquors file in the office of the Clerk of the Circuit Court of Dade County, Florida, a sworn information stating the quantity and kind of liquor seized, the person to whom consigned, and to the best of his information, knowledge and belief that the liquor is and was intended for sale and use in violation of law, and not for the private use of the consignee.

"8. That the only informations of any kind whatsoever which have ever been filed by the Sheriff are those which are now filed in this case, and these informations were sworn to, in the first instance, in the month of March, 1916, about four or five months after the seizure of the liquor, and on the 26th day of May, 1916, were amended without the knowledge of Gabe Lippman, to read the 26th day of May, and on the said 26th day of May, 1916, said informations were filed in the office of the Clerk of the Circuit Court for Dade County, Florida.

"10. That none of the said informations were served by the Sheriff upon Gabe Lippman, the transportation company or the consignees therein named, but that the sheriff did mail to each of the consignees in a stamped addressed envelope postage prepaid, a copy of the information against the particular package of liquor ordered by said consignees; and the said several envelopes were deposited by the sheriff for mailing in the Post Office at Miami, Florida, on the 26th day of May, 1916, and that each and every envelope and contents was returned by the Post Office authorities unclaimed, marked 'returned to writer—unclaimed. From Miami, Fla.'

"11. That the Sheriff did not serve any of the consignees in any other manner than by the mailing of copies of the information as aforesaid. That on the 26th day of May, 1916, by mail, the Sheriff notified the carrier and Gabe Lippman that he had seized the liquors, but did not send either of them copies of the information.

"12. That in addition to the forty-one cases of liquor mentioned in this stipulation, the sheriff also seized a few other cases shipped by Gabe Lippman to consignees in Miami, other than the cases herein mentioned, and the sheriff, upon satisfactory evidence being presented to

.him has heretofore delivered the said liquor to the said consignees.

"13. That soon after the liquors were seized the transportation company notified Gabe Lippman thereof, but this was the only notification that he had until notified by the sheriff on May 27th, 1916. That the said Gabe Lippman soon after receiving the · notice from the railroad company wrote Atkinson & Burdine, their attorneys, at Miami, Florida, asking said attorneys to represent him at the hearing, if any were ever had.

"14. That at the March term of the Circuit Court the matter of the liquors was called to the court's attention by the State Attorney of this Circuit, at which time counsel for Gabe Lippman was not present; but the court's attention was directed to the fact that the law was not complied with, in that the informations had not been filed and notices served as required by the Acts of 1913, Chapter 6513, thereupon the court ordered and instructed the sheriff and State Attorney to take the proper procedure, and to bring the matter up at the next term of the Circuit Court. ·

"15. That during the May term, 1916, of the Circuit Court, the court ordered the matter of the proceedings for the forfeiture of the said liquor to be set for a day certain, to-wit: May 25th. Up to this time Gabe Lippman, the carriers or the consignees had not been served with any notice, but their attorneys by reason of being in the court room, heard the order made, and on said date, Bart A. Riley of the office of Atkinson & Burdine, appeared before the Judge to resist and protest against any order being made concerning the liquors and Attorney Riley called the court's attention to the fact that no service had been made on Gabe Lippman or on any of the consignees, and contended that the law had not been

complied with, in that the informations required by . Chapter 6513 had not been filed. The court's attention being directed to these matters, the court thereupon delivered his opinion and held that the court was powerless to make any orders in the premises, but that by reason of the neglect on the part of the officers to properly comply with the law, the court would not allow the State's interests to be prejudiced, and thereupon directed the sheriff to have the informations filed at once and the proper service made and to generally comply with the law. And thereupon the Sheriff stated to the court that if his failure to file the informations within 24 hours would invalidate the seizure he would make a tender of the liquors back to Mr. Riley and seize them again. Thereupon the Sheriff in open court turned to Attorney Riley and said 'I tender you back the liquor and I seize the liquor again.' That at the time that the statement was made by the Sheriff, court was open, his honor on the bench, and Attorney Riley was addressing the court; that the liquor was stored in a building some 150 or 200 feet from the court room in a stone building, locked and sealed. That Attorney Riley made no reply to the Sheriff's tender, but continued his address to the court. That at the conclusion of the address of Attorney Riley to the court, the court, after considering, then set the date for the trial of the cases on Wednesday, the 31st day of May, and ordered the sheriff to comply with the law relative to filing and serving the informations. That up to this time no informations of any kind had been filed by the sheriff in the office of the Clerk of the Circuit Court, nor had he filed any papers of any kind whatsoever in the said Clerk's office, and that therefore no claim or answer was filed by the consignees in said office or with the court; but that the sheriff had on March 24th made out informa-

tions and sworn to them before a notary public, but had not filed them or presented them to the court until the said 25th day of May, A. D. 1916. That upon the court setting down the hearing on the informations for May 31st, the sheriff thereupon took the affidavits which he had signed on March 24th and changed the date so that they would read May 26th, and filed the same in the office of the Clerk of the Circuit Court and mailed copies of the said informations to the consignees; all the original notices now being on file in the office of the Clerk of the Circuit Court.

"16. That on May 31st, 1916, at 10 o'clock in the forenoon, the court was opened and the sheriff produced before his Honor the informations just mentioned with his return thereon. That thereupon the hearing was adjourned until June 2nd, 1916, on which said date the attorneys for Gabe Lippman appeared and filed in said cause their special appearance and motion to quash, plea in abatement and plea to the jurisdiction. That thereupon, the court, after due argument, overruled the several pleadings, to which exception was duly taken, as appears by the orders herein filed; and the court stated that the Acts of 1913, fully prescribed the method of procedure, and that the only pleadings which the act permitted the claimant to file was his answer or claim, and that no other pleadings would be consistent with the act. Thereupon the claimant filed his answer and claim, sworn to and verified, which is part of the record herein.

"That upon the filing of said claim and answer, the matter was then and there ready for the taking of testimony. Whereupon for the purpose of avoiding the expense of taking the testimony and continuing to hold court, this stipulation, with the consent of the court, was entered into.

"17.   It is further understood and agreed between the State of Florida and the claimant that the value of the said liquor is hereby fixed at $450.00.

"18.   It is further agreed that in the event the court orders the destruction of the liquor, and that claimant appeals from the order that the original bills of lading and the original orders from the persons named in the claim herein filed, be withdrawn from the files and sent to the Supreme Court; and that likewise it is stipulated that only one copy of the informations and return be included in the transcript of record, the same to serve as though the entire 41 had been therein included.

> *"Dan Hardie,*
> *"Sheriff Dade County,*
> "For the State of Florida.
>
> *"Atkinson & Burdine,*
> "Attorneys for Claimant."

The following proceedings were thereupon had:

"On the 9th day of June, A. D. 1916, at a term of said court, came the respective parties by their attorneys and submitted said cause, on the issues joined between them to the court, and thereupon the court announced that it would enter judgment against the defendants.

"On the 9th day of June, A. D. 1916, the defendant filed the following motion in arrest of judgment:

> "In the Circuit Court of the Eleventh Judicial Circuit of the State of Florida, In and for the County of Dade.

"The State of Florida,
        "versus
"41 Cases of Intoxicating Liquor
Shipped by Gabe Lippman.

"Now comes the claimant, Gabe Lippman, and moves the court to arrest and set aside the judgment herein, for the reasons following, to-wit:

"1.   On the ground that the court erred in overruling the defendant's motion to quash the informations herein, each and every ground of which said motion is hereby urged before the court and renewed in this motion as if it was particularly set forth herein.

"2.   On the ground that the matter of the forfeiture of the said liquor, not having been brought legally before the court, the court had nothing upon which to base a valid decree.

"3.   For that there is not sufficient evidence before the court to warrant the forfeiture of the said liquor, under the several informations filed.

"4.   For that a forfeiture under said informations would be depriving the claimant of his constitutional rights to a jury, and would and is effectually taking the claimant's property without due process of law.

                    "Atkinson & Burdine,
                    "Attorneys for Claimant."

"On the 9th day of June, A. D. 1916, the court made the following ruling on said motion.

"The above and foregoing motion coming on this day to be heard, and the court being advised in the premises,

it is ordered, adjudged and decreed that the same be and it is hereby denied.

"Done and ordered in Miami, June 9th, 1916.

"*H. Pierre Branning,*

"Judge.

"On the 19th day of June, A. D. 1916, the following judgment and decree was entered by the court:

"In the Circuit Court of the Eleventh Judicial Circuit of the State of Florida, In and for the County of Dade.

"The State of Florida,

"versus

"41 Cases of Intoxicating Liquor Shipped by Gabe Lippman.

"The above cause coming on to be heard before me upon the information filed therein and the answer and claim and exhibits of the claimant, Gabe Lippman, and the court having inspected all the files, exhibits attached to petition or claim and all exhibits and records in this case, and read the stipulation entered into between the parties, and the court being of the opinion that the said liquor in each of the above 41 cases was found in the County of Dade, State of Florida, and was intended for sale therein in violation of law.

"*It is Therefore Ordered, Adjudged and Decreed* that all the liquor contained in the 41 cases in this proceeding, be forfeited, and the Sheriff of Dade County, be and he is hereby ordered to destroy said liquor on the 3rd day of July, A. D. 1916. The value of said 41 cases of liquor is $450.00.

"Done and ordered in Miami, Florida, this 19th day of June, A. D. 1916.

> "*H. Pierre Branning,*
> "Judge."

The claimant then filed the following motion to set aside and vacate the decree:

"Now comes the claimant, Gabe Lippman, and moves the court to set aside and vacate the order or decree herein filed, forfeiting the liquor in this cause and ordering it destroyed, for the reasons following, to-wit:

"1. For that the court erred in denying and overruling the claimant's motion to quash and special appearance.

"2. For that the court erred in denying and overruling the claimant's plea to the jurisdiction.

"3. For that the court erred in denying and overruling the claimant's plea of abatement.

"4. For that the court erred in denying and overruling the claimant's motion in arrest of judgment.

"5. For that the court erred in entering judgment in said cause.

"6. For that the court erred in entering an order for the destruction of the said liquor on the proceedings herein taken."

This motion was overruled, whereupon the claimant entered his appeal and has assigned the following errors:

"Now comes the appellant in the above entitled cause, and assigns as error, the following rulings and decisions of the Circuit Court Judge, of the Eleventh Judicial Circuit of the State of Florida in and for the County of Dade:

"1st. The court erred in overruling and denying the plea in abatement.

"2nd.   The court erred in denying the motion to quash the information.

"3rd.   The court erred in overruling and denying the plea to the jurisdiction.

"4th.   The court erred in entering an order for the destruction of said liquor.

"5th.   The court erred in overruling and denying the motion in arrest of judgment.

· "6th.   The court erred in overruling and denying the motion to set aside the decree.

"7th.   The court erred in entering judgment herein."

In view of the conclusion which we have reached, it becomes unnecessary to discuss these assignments in detail.   Neither shall we discuss the constitutional questions which have been raised, since the case can be fully disposed of without adjudicating any of such questions. See Carolina-Florida Planting Co. v. Maige, 64 Fla. 234, 60 South. Rep. 346, and prior decisions of this court there cited.   Ignoring these questions and assuming, without deciding, that this Chapter 6513 is constitutional, we are of the opinion that the decree ordering the destruction of such intoxicating liquors must be reversed for the reason that, as is shown by the stipulation made and entered into by the respective parties, which we have copied above, there was a signal failure to comply with the provisions of such Chapter.   Instead of the informations mentioned in Section 5 of such Chapter having been filed within twenty-four hours after the seizure of the intoxicating liquors, as therein required, such informations were not filed until four or five months after such seizure. Still other failures to comply with the provisions of such Chapter are admitted by such stipulation, as a reference thereto will readily disclose.   We shall not undertake to discuss and pass upon the sufficiency of the evidence be-

fore the Circuit Judge to support his finding that the intoxicating liquors contained in the 41 cases so seized by the sheriff "was found in the County of Dade, State of Florida, and was intended for sale therein in violation of law," as it is not necessary that we should do so, but we think it advisable to say that it is not as satisfactory as it should be. We have said sufficient to show that the decree must be reversed, and it is so ordered.

Decree reversed.

TAYLOR, C. J., and COCKRELL, WHITFIELD and ELLIS, JJ., concur.