866 So.2d 28 (2004)
Elizabeth SULLIVAN, etc., Appellant,
v.
Landon Cole SAPP, Appellee.
No. SC02-2490.
Supreme Court of Florida.
January 15, 2004.
*30 George T. Reeves of Davis, Schnitker, Reeves & Browning, P.A., Madison, FL, for Appellant.
Harvey E. Baxter, Gainesville, FL, for Appellee.
LEWIS, J.
We have for review Sullivan v. Sapp, 829 So.2d 951 (Fla. 1st DCA 2002), in which the First District Court of Appeal expressly declared section 61.13(2)(b)2.c. of the Florida Statutes (2001) unconstitutional as violative of the right of privacy as articulated in article I, section 23 of the Florida Constitution. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
A review of the procedural history of this case reveals that Frances Adrienne Sullivan gave birth to a son in September 1999. Subsequently, she filed a paternity action against Landon Cole Sapp, "to determine custody, parental responsibility, and child support under chapter 742, Florida Statutes." The final judgment of paternity was entered on March 14, 2001, which declared Sapp to be the natural father of the child,[1] and made further provision for Sullivan and Sapp to have shared parental responsibility. Additionally, the court determined that primary physical residence of the child would be with his mother, while his father would have the right to reasonable access and would be required to provide monetary child support. The trial court also determined and included a provision in the final judgment that the father would be eligible to claim the dependency exemption for the child for federal income tax purposes in even-numbered tax years, while the mother would be eligible to claim the exemption in odd-numbered tax years.
On March 20, 2001, the mother filed a timely motion for rehearing in the paternity action. The sole issue asserted for rehearing pertained to a clarification of the provision relating to the eligibility of each parent to claim the child as a dependent for federal income tax purposes. No other aspect of the final judgment was challenged on rehearing. Tragically, before the trial court had the opportunity to consider and rule on the motion for rehearing, the mother, Frances Adrienne Sullivan, was killed in an automobile accident. Following the mother's death, the child's maternal grandmother, Elizabeth Sullivan, filed a "Motion to Intervene and for the Award of Reasonable Visitation to Grandparent," seeking to intervene in the paternity action that was pending on rehearing and requesting grandparent visitation rights pursuant to section 61.13(2)(b)2.c. of the Florida Statutes (2001).[2] Notably, in her motion to intervene and for visitation rights, the grandmother only alleged that, "The award of visitation for the maternal *31 grandparent in this instance is in the child's best interest." This statement was not explained or expanded upon, nor did the grandmother present any claim that the child would suffer any harm due to a lack of interaction with the maternal grandmother or for any other reason.
In response to the grandmother's motion to intervene and for visitation rights, the father filed a "Motion to Dismiss and Motion for Award of Attorney's Fees." In his motion, the father argued that the mother's death rendered the pending motion for rehearing in the paternity action moot because the rehearing motion did not in any way attack the validity of the final judgment of paternity and the only issue on rehearing pertained to economic matters related to the dependency tax exemption. Subsequently, Elizabeth Sullivan filed a "Motion to Substitute Parties," in which she requested that the court substitute her, as personal representative of the estate of her daughter, as the petitioner in the paternity action in which rehearing was pending. In that motion, she affirmatively argued that the paternity action was not extinguished by the death of the mother, and that there were substantive issues remaining that required judicial resolution.
A hearing was conducted on October 2, 2001, to consider arguments on the grandmother's motion to intervene and motion for visitation, and on the father's motion to dismiss. Following this hearing, the trial court entered an order granting the father's motion to dismiss, and dismissed the motion to intervene and for visitation. The court held that the issue in which the grandmother sought to intervene, which related to the custody of and personal contact with the child, was no longer in dispute after the mother's death and was not the subject of pending rehearing consideration. The only question pending on rehearing was directed to economic considerations, and therefore there was no viable pending matter at issue in which she could intervene. The trial court relied upon Union Central Life Insurance Co. v. Carlisle, 566 So.2d 1335 (Fla. 4th DCA 1990), aff'd, 593 So.2d 505 (Fla.1992), to support its holding that the grandmother was not entitled to intervene in the paternity action. Additionally, the court determined that the ultimate relief sought by the grandmother, namely visitation rights, was not available to her based upon this Court's holdings in other grandparent visitation cases, such as Von Eiff v. Azicri, 720 So.2d 510 (Fla. 1998), and Beagle v. Beagle, 678 So.2d 1271 (Fla.1996).
On October 26, 2001, the grandmother filed a motion for rehearing. The trial court held another hearing on November 27, 2001, to address all of the issues remaining between the parties. The trial court issued its final order on January 22, 2002, granting the grandmother's motion to substitute parties, but denying both the motion for rehearing in the original paternity action, which had been filed before the mother's death, and the grandmother's motion for rehearing directed to her intervention and for the award of grandparent visitation.
On appeal, the First District affirmed the trial court's ruling, and held that "the grandmother's motion was contrary to Florida's right to privacy provision, Article I, Section 23 of the Florida Constitution." Sullivan, 829 So.2d at 952. In its opinion, the district court did not address the issue as to whether the grandmother even had a right to intervene in the underlying paternity action. Instead, the court only addressed the substantive issue concerning the constitutionality of section 61.13(2)(b)2.c., which was relied upon by the grandmother in her motion for intervention and visitation. The district court held that this case is controlled by Richardson *32 v. Richardson, 766 So.2d 1036 (Fla. 2000), in which this Court determined that section 61.13(7), Florida Statutes (1999), which attempted to confer standing on grandparents to request custody based solely on the best interests of the child, violated the natural parent's fundamental right to privacy. See Sullivan, 829 So.2d at 952. In addition to Richardson, the district court noted that the reasoning outlined in Beagle, Von Eiff, and Saul v. Brunetti, 753 So.2d 26 (Fla.2000), supported the conclusion that section 61.13(2)(b)2.c. "is facially unconstitutional in that it intrudes on the father's fundamental privacy right to raise his child free from governmental interference." Sullivan, 829 So.2d at 952. A timely request for review by this Court followed.
Initially, we must address whether the death of the mother, after entry of the final judgment in the paternity action, but while the mother's motion for rehearing concerning economic issues was pending, rendered the entire action moot and divested the trial court of jurisdiction to consider the motion for rehearing or to render any further orders in the action. Under the controlling authority of this Court's decision in Gaines v. Sayne, 764 So.2d 578 (Fla.2000), we hold that the paternity judgment was not voided by the death of the mother and, further, the cause of action was not rendered totally moot by the mother's death. Therefore, the trial court retained jurisdiction to consider the economic matters pending in the motion for rehearing.
In Gaines, we considered "whether the death of a party after entry of a final decree of dissolution of marriage but prior to a decision on a timely motion for rehearing automatically voids the dissolution, abates the dissolution proceeding, and deprives the court of jurisdiction to render any further orders in the matter." 764 So.2d at 579. There we held, "[T]he entry of a written judgment of dissolution is not voided by the subsequent death of a party where any remaining issues properly raised on rehearing or appeal relate solely to matters collateral to the adjudication of dissolution." Id. at 586. Noting that on rehearing neither party had contested the finding that the marriage was broken or the trial court's adjudication of dissolution based upon that finding, this Court reasoned that, "all judicial labor on the issue of dissolution had ended upon the entry of the final judgment. Under these circumstances, to void the dissolution decree on the basis that [the wife] died while a motion for rehearing raising other issues was pending would be contrary to the parties' undisputed intent to be divorced and could lead to unjust and inequitable results." Id.
Consistency of logic and jurisprudence requires that we likewise hold here that the death of the mother after entry of the final paternity judgment, but while the motion for rehearing was pending as to only a single economic matter, did not void the paternity judgment, render the motion for rehearing moot, or divest the trial court of jurisdiction to adjudicate the remaining issues between the parties. As in Gaines, the trial court below had entered the final judgment in the paternity action, and the motion for rehearing, concerning only the tax issue, had been filed prior to the death of the mother. See Sullivan, 829 So.2d at 952. On rehearing, the mother challenged only a collateral economic issue, namely which parent would have the right to claim the child as a dependant for federal income tax purposes, and did not challenge the trial court's findings regarding paternity, residency, visitation, child support, or any other substantive issue. See id. In accordance with Gaines, because the issue presented on rehearing *33 related solely to the tax matters collateral to the adjudication of paternity, the basic final judgment as to the substantive issues was not voided upon the mother's death, and the trial court retained jurisdiction to consider the collateral economic matters that were pending at the time of the mother's death.
We next turn to the main issue presented in this casewhether a grandmother may intervene in a paternity action to request visitation with her grandchild. Unquestionably, any time a party seeks to intervene in a cause of action, a two-step process is implicated. First, the court must address whether intervention is proper. Only after the court has determined that intervention is proper does it become necessary to move to the second step, which involves consideration of the merits of the intervenor's claim. This Court has promulgated the criteria for intervention which must be satisfied before a party will be permitted to intervene in a cause of action. See Union Cent. Life Ins. Co. v. Carlisle, 593 So.2d 505, 507 (Fla. 1992).
The parties, in their respective briefs, have seemingly overlooked the first step of the analysis, and instead have proceeded to only debate the constitutionality of section 61.13(2)(b)2.c. Likewise, the district court addressed the issues as presented by the parties and did not address whether intervention was even proper in this case, and instead focused solely upon the constitutionality of the statute. See Sullivan, 829 So.2d at 952. The trial court correctly recognized the inherent two-step process involved here. In the trial court's order dismissing the grandmother's motion to intervene, the court noted that intervention was inappropriate because the issue in which the grandmother sought to intervene, namely visitation, was no longer a viable question upon the mother's death after entry of the final judgment. The only issue pending on rehearing was economic in nature, and therefore there was no disputed substantive visitation matter in which the grandmother could intervene. Therefore, the trial court properly addressed the question presented by first analyzing whether intervention by the grandmother was even permissible, and determined that it was not.
In Union Central, this Court reiterated the test to determine the nature of the interest that would entitle a party to intervene. There, we clearly stated:
[T]he interest which will entitle a person to intervene ... must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. In other words, the interest must be that created by a claim to the demand in suit or some part thereof, or a claim to, or lien upon, the property or some part thereof, which is the subject of litigation.
593 So.2d at 507 (quoting Morgareidge v. Howey, 75 Fla. 234, 78 So. 14, 15 (1918)). The grandmother, attempting to intervene in the paternity action post-judgment, cannot satisfy this standard. As noted by the trial court, at the time the grandmother filed her motion to intervene, the only issue remaining between the parties was economic in nature. The substantive dispute with regard to issues of paternity, custody, child support, and, most importantly, visitation were no longer at issue; the mother's motion for rehearing following the trial court's judgment in the paternity action related only to the economic dispute as addressed through tax benefits. The interestvisitationwhich the grandmother was attempting to assert was no longer "the matter in litigation," as required by Union Central. Therefore, because *34 the grandmother could not satisfy this Court's intervention test, the trial court properly denied the grandmother's motion to intervene.
Although this case may be resolved exclusively on the basis of the grandmother's failure to satisfy the intervention test, we deem it necessary to further address the decision of the First District, holding section 61.13(2)(b)2.c. of the Florida Statutes unconstitutional, to support and maintain uniformity in Florida law. The First District's decision is in express and direct conflict with that of the Fourth District in Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998), wherein that court held that section 61.13(2)(b)2.c. does not violate the right of privacy and is within constitutional parameters. The lower courts are currently at odds with regard to this issue of great importance to the citizens of Florida, and it is the obligation of this Court to provide guidance to and uniformity for the lower courts as we address this conflict. We have noted, carefully studied, thoughtfully considered, but ultimately conclude that we must reject the dissenting view which would counsel that we should not address the very issues upon which the foundation of our jurisdiction is based.
The fundamental constitutional issues presented to this Court for review and resolution today impact Florida's children and Florida's families. This Court has implemented a policy for itself and all Florida courts that we should and must resolve these disputes involving children and families as expeditiously as possible to remove any doubt and uncertainty. We must recognize that Florida's families have neither unlimited financial resources nor unlimited emotional capital to invest in continuing unnecessary legal proceedings. It is our view that it would be irresponsible and contrary to our well-established policy to decline resolution of the very issue upon which our jurisdiction for this case is predicated under the circumstances presented here.
We decline to follow the dissenting view, which would force these parties to proceed through the entire legal process a second time only to relitigate the fundamental underlying issue which has driven these proceedings to this ultimate result and has already been considered at each level of our judicial system. We choose to resolve the issue and not force these parties and other Florida families to unnecessarily expend the financial and emotional costs associated with these unfortunate disputes. We are comfortable that the controlling authority upon which we rely to address this constitutional issue fully supports our decision and that we have in no way tarnished the formalistic doctrine upon which those in the dissent would rely to reject resolution of the fundamental issue before us, which would, most assuredly, have a continuing negative impact upon our children and families.
We fully recognize that when a case may be resolved on grounds other than constitutional, the Court will ordinarily refrain from proceeding to decide the constitutional question. See Metro. Dade County Transit Auth. v. State Dep't of Highway Safety & Motor Vehicles, 283 So.2d 99, 101 (Fla.1973); In re Estate of Sale, 227 So.2d 199, 201 (Fla.1969). However, we also recognize the well-settled principle that "once an appellate court has jurisdiction it may, if it finds it necessary to do so, consider any item that may affect the case." Westerheide v. State, 831 So.2d 93, 105 (Fla.2002); see also Cantor v. Davis, 489 So.2d 18, 20 (Fla.1986); Trushin v. State, 425 So.2d 1126, 1130 (Fla.1982). When, as here, the constitutional conflict issue is the basis for our jurisdiction, disposition of the constitutional question will aid the lower courts, afford guidance, serve *35 to resolve and eliminate a conflict between the district courts, and advance the underlying policy of removing uncertainty for children and families, we find it necessary to consider the constitutional issue. See State v. Dye, 346 So.2d 538, 541 (Fla.1977) (electing to consider the constitutionality of a statute, although the question presented could effectively be resolved on other grounds, where consideration of the constitutionality of the statute would aid in the disposition of future proceedings in the lower courts); Green v. State ex rel. Phipps, 166 So.2d 585, 587 (Fla.1964) (deciding to examine the constitutional question, even though case could be decided on another ground, because the case involved a matter of great public importance, namely the extent of the taxing power of the state); Ex parte Lewis, 101 Fla. 624, 135 So. 147, 149-50 (1931) (recognizing that the Supreme Court of Florida, as well as the Supreme Court of the United States, "has at times given its opinion concerning matters of great importance involving important principles of constitutional law affecting the powers and duties of public officials, even though a decision on the constitutional points in the particular case was unnecessary to dispose of it").
Section 61.13(2)(b)2.c. provides:
The court may award the grandparents visitation rights with a minor child if it is in the child's best interest. Grandparents have legal standing to seek judicial enforcement of such an award. This section does not require that grandparents be made parties or given notice of dissolution pleadings or proceedings, nor do grandparents have legal standing as "contestants" as defined in s. 61.1306. A court may not order that a child be kept within the state or jurisdiction of the court solely for the purpose of permitting visitation by the grandparents.
§ 61.13(2)(b)2.c., Fla. Stat. (2001).[3] Adopted in 1978, this subsection specifically applies in the dissolution of marriage context. However, in 1984, the Legislature passed a "Grandparental Visitation Rights" statute, codified in chapter 752 Florida Statutes (2003). Until recent amendments, section 752.01 provided:
(1) The court shall, upon petition filed by a grandparent of a minor child, award reasonable rights of visitation to the grandparent with respect to the child when it is in the best interest of the minor child if:
(a) One or both parents of the child are deceased;
(b) The marriage of the parents of the child has been dissolved;
(c) A parent of the child has deserted the child;
(d) The minor child was born out of wedlock and not later determined to be a child born within wedlock as provided in s. 742.091; or
(e) The minor is living with both natural parents who are still married to each other whether or not there is a broken relationship between either or both parents of the minor child and the grandparents, and either or both parents have used their parental authority to prohibit a relationship between the minor child and the grandparents.
§ 752.01(1), Fla. Stat. (1995).
This Court has considered the constitutionality of section 752.01 on several occasions, and has determined all but two of the provisions of this section to be unconstitutional *36 as violative of Florida's right to privacy. In Beagle v. Beagle, 678 So.2d 1271 (Fla.1996), we held section 752.01(1)(e) unconstitutional. Utilizing the compelling state interest standard, we stated:
The challenged paragraph does not require the State to demonstrate a harm to the child prior to the award of grandparental visitation rights. Based upon the privacy provision in the Florida Constitution, we hold that the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm.... Without a finding of harm, we are unable to conclude that the State demonstrates a compelling interest. We hold that, in the absence of an explicit requirement of harm or detriment, the challenged paragraph is facially flawed.
Beagle, 678 So.2d at 1276-77. Subsequently, in Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998), we adhered to the holding in Beagle, reasoning: "Neither the legislature nor the courts may properly intervene in parental decision-making absent significant harm to the child threatened by or resulting from those decisions." Id. at 514. The Von Eiff Court declared section 752.01(1)(a) facially unconstitutional, as it did not "require a showing of demonstrable harm to the child before the State's intrusion upon the parent's fundamental rights." Id. Notably, the facts of Von Eiff are substantially similar to those presented here. In Von Eiff, the biological mother of the child died shortly after the child's birth. See id. at 511. The father of the child, along with his new wife, who had adopted the child, severely limited contact between the child and her biological maternal grandparents. See id. The grandparents eventually filed a petition for unsupervised visitation with the child, pursuant to section 752.01(1)(a). See id. One important difference between section 752.01(1)(a), the statute relied upon in Von Eiff, and section 61.13(2)(b)2.c., is that section 752.01(1) mandates that the court "shall" award visitation when it is in the best interests of the child, see § 752.01(1), Fla. Stat. (1995), while section 61.13(2)(b)2.c. holds that courts "may award the grandparents visitation rights with a minor child if it is in the child's best interest." § 61.13(2)(b)2.c., Fla. Stat. (2001) (emphasis supplied). This difference is of little consequence, however, as both statutes require only a best interest of the child standard, and do not necessitate the essential showing of harm to the child as a result of a lack of grandparent visitation as a condition precedent for such intervention.
Most recently, this Court held section 752.01(1)(d) unconstitutional in Saul v. Brunetti, 753 So.2d 26 (Fla.2000). Saul involved a child of an unmarried couple. See Saul, 753 So.2d at 27. As in the case presented here, the mother died shortly after the child's birth and the father assumed full custody of the child. See id. A dispute arose between the maternal grandparents and the father with regard to visitation, and the grandparents filed an action seeking visitation. See id. Analyzing that section 752.01(1)(d) "suffers from the same constitutional infirmity as subsection (a) in Von Eiff," this Court held subsection (d) unconstitutional. Id. at 28-29. Importantly, in Saul we highlighted that in Von Eiff we found no difference between the rights of privacy of a natural parent in an "intact family" and the rights of a widowed parent. See id. at 28. One cannot properly distinguish Beagle and Von Eiff on the basis that in those cases the parents had once been married, while Saul involved an out-of-wedlock child. See id. Following the rationale of the Fourth District in Brunetti v. Saul, 724 So.2d 142 (Fla. 4th DCA 1998), aff'd, 753 So.2d 26 (Fla.2000), *37 we reasoned, "If the father of a child born into a marriage has a right of privacy where the biological mother is deceased, which was the holding in Von Eiff, it follows that the father of an out-of-wedlock child has the same right of privacy." Saul, 753 So.2d at 28 (quoting Brunetti, 724 So.2d at 143).
While the remaining provisions of section 752.01(1), namely subsections (b) and (c), have not expressly been declared unconstitutional by this Court, this Court did hold that a trial court order, which granted a grandmother visitation pursuant to section 752.01(1)(b), "directly contravenes the [mother's] right to privacy and decision-making in rearing her child." Belair v. Drew, 770 So.2d 1164, 1167 (Fla.2000). On remand, the Fifth District Court of Appeal recognized and expressly held that section 752.01(1)(b) "fails to survive the compelling state interest test required by Beagle and is facially unconstitutional as it impermissibly infringes on privacy rights protected by Article I, section 23 of the Florida Constitution." Belair v. Drew, 776 So.2d 1105, 1107 (Fla. 5th DCA 2001); see also Lonon v. Ferrell, 739 So.2d 650, 653 (Fla. 2d DCA 1999) (declaring section 752.01(1)(b) facially unconstitutional).
Finally, the First District determined that the present case is controlled by this Court's holding in Richardson v. Richardson, 766 So.2d 1036 (Fla.2000). See Sullivan, 829 So.2d at 952. In Richardson, this Court held that section 61.13(7) of the Florida Statutes "is facially unconstitutional in vesting custody rights in others because it violates a natural parent's fundamental right to rear his or her child." 766 So.2d at 1037. Section 61.13(7) provided: "In any case where the child is actually residing with a grandparent in a stable relationship, whether the court has awarded custody to the grandparent or not, the court may recognize the grandparents as having the same standing as parents for evaluating what custody arrangements are in the best interest of the child." § 61.13(7), Fla. Stat. (1999). Relying upon Von Eiff and Beagle, we held, in Richardson, that there was no compelling state interest to justify the violation of a parent's fundamental right to raise his or her child inherent in enforcement of section 61.13(7). See Richardson, 766 So.2d at 1038. There, we concluded:
In effect, section 61.13(7) treats grandparents and natural parents alike by giving grandparents custody rights equal to those of a parent, and allows courts to make its custody determination between parents and grandparents based solely on the best interest of the child standard. The grant of such rights to grandparents is unconstitutional under our reasoning in Von Eiff because it also interferes with the natural parent's fundamental right to privacy in rearing one's own child, a right this Court found to exist under article I, section 23 of the Florida Constitution. See Von Eiff. Hence, we find no valid basis to distinguish the custody statute we consider here from the visitation statute we considered in Von Eiff and Beagle, except for the fact the custody statute is even more intrusive upon a parent's rights.
Id. at 1039-40. Clearly, this Court has consistently held all statutes that have attempted to compel visitation or custody with a grandparent based solely on the best interest of the child standard, without the required showing of harm to the child, to be unconstitutional. We agree with the district court below and likewise hold that section 61.13(2)(b)2.c. of the Florida Statutes is unconstitutional as violative of Florida's right of privacy because it fails to require a showing of harm to the child prior to compelling and forcing the invasion *38 of grandparent visitation into the parental privacy rights.
Section 61.13(2)(b)2.c. provides that a court "may award the grandparents visitation rights with a minor child if it is in the child's best interest." § 61.13(2)(b)2.c., Fla. Stat. (2001). This provision does not require a showing of the essential element of harm to the child should visitation with a grandparent be denied. Here, the grandmother did not claim in any pleading and has not asserted that any harm will come to the child if visitation with her does not occur. Under the authority of this Court's holdings in Beagle, Von Eiff, Saul, and Richardson, we hold that section 61.13(2)(b)2.c., which fails to require a showing of harm to the affected child, does not further a compelling state interest, and, therefore, it is facially unconstitutional as violative of a parent's fundamental right of privacy.
The Fourth District's decision in Spence is an anomaly among decisions from Florida courts and is outdated because it holds that a grandparent visitation statute does not violate the Florida Constitution. In Spence, which was decided prior to our decisions in Von Eiff, Saul, and Richardson, but subsequent to Beagle, the Fourth District held that section 61.13(2)(b)2.c. does not violate privacy rights because the circumstances concerned parents who were involved in a paternity action, and, according to the Fourth District, had thereby waived their right to privacy. See Spence, 705 So.2d at 998. The Fourth District reasoned, "Because the parents have already abandoned their right of familial privacy by bringing their dispute before the court, the court's further consideration of whether grandparental visitation is in the best interest of the child is not violative of the right to privacy." Id. The court's analysis pertaining to waiver of the right of privacy has, however, been questioned in subsequent decisions. See Lonon, 739 So.2d at 652 n. 3; Brunetti v. Saul, 724 So.2d 142, 144 (Fla. 4th DCA 1998) (Klein, J., concurring specially).
Additionally, the reasoning in Spence has been further completely undermined by this Court's decisions in Von Eiff, Saul, and Richardson. Spence held that "matters involving custody and visitation in paternity actions should be based on the best interest of the child, as they are in dissolution proceedings." 705 So.2d at 998. However, every statute considered by this Court involving visitation or custody of a child by a grandparent has been deemed unconstitutional because none included harm to the child as the required standard; the best interest of the child standard is not sufficient. See Beagle, 678 So.2d at 1276-77; Von Eiff, 720 So.2d at 514; Saul, 753 So.2d at 29; Richardson, 766 So.2d at 1039-40. Most notably, in Richardson, grandparents moved to intervene in a modification of custody action, seeking custody of a child pursuant to section 61.13(7), and this Court held that the statute was unconstitutional in part because the statute failed to require evidence of demonstrable harm to the child. See 766 So.2d at 1039-40. The rationale of Spence is simply contrary to the decisions of this Court in all of the cases considering the issue of grandparent visitation and custody in this context, and, therefore, it is disapproved. A father who has been a party in paternity litigation has no lesser right to privacy under this state's constitution than a parent who has not been before a court.
Based upon the foregoing, we affirm the decision of the First District to the extent the lower court properly held section 61.13(2)(b)2.c. unconstitutional, and disapprove the Fourth District's holding in Spence v. Stewart to the extent it conflicts with our holding herein.[4]
It is so ordered.
*39 ANSTEAD, C.J., and PARIENTE and QUINCE, JJ., concur.
CANTERO, J., concurs in part and dissents in part with an opinion, in which WELLS and BELL, JJ., concur.
CANTERO, J., concurring in part and dissenting in part.
The threshold issue in this case is whether a grandparent may properly intervene in a paternity action after a final judgment of paternity has been entered and the case is pending rehearing solely on an economic issue. The majority concludes that "because the grandmother could not satisfy this Court's intervention test, the trial court properly denied the grandmother's motion to intervene." Majority op. at 33-34. I concur. Having decided that dispositive issue, however, the analysis should end. The majority concedes that "this case may be resolved exclusively on the basis of the grandmother's failure to satisfy the intervention test," majority op. at 34, yet "deem[s] it necessary" to address the constitutional issue so that it could "support and maintain uniformity in Florida law." Id. I would not succumb to this temptation.
Since at least 1888, this Court has subscribed to a principle of judicial restraint sometimes called the "last resort rule,"[5] in which we avoid considering a constitutional question when the case can be decided on nonconstitutional grounds.[6] The district courts of appeal also subscribe to the rule.[7] The policy behind the rule stems from "respect for other branches and levels of government, an awareness of the limitations of judicial power, sensitivity to the burdens of a constitutional adjudication, and appreciation that others may provide a more useful answer." O'Keefe v. Passaic Valley Water Comm'n., 132 N.J. 234, 624 A.2d 578, 582 (1993); see also Curless v. *40 County of Clay, 395 So.2d 255, 257 (Fla. 1st DCA 1981) (noting that the policy underlying the rule "emanates from the judicial deference to the legislative branch of government"). Because the policy justifications for the rule are just as relevant today as they were in 1888, we should continue to avoid constitutional questions when other grounds for decision exist.
As the majority notes, the district court in this case decided the constitutional issue without even considering the nonconstitutional ground. Therefore, we should quash the First District's opinion and decide the case solely on the nonconstitutional ground, as the district court should have done. By deciding this issue now, simply because the district court did so, however, we actually encourage appellate courts to decide such issues. If the only consequence of unnecessarily declaring a statute unconstitutional is that this Court, on what will then be mandatory review from such a decision,[8] resolves the issue as well, we provide no disincentive for reaching such issues and we quietly but inevitably eviscerate the last resort rule.
The majority's main reason for reaching the constitutional issue is the need to "support and maintain uniformity in Florida law." Majority op. at 34. I am unconvinced that such a need exists in this case. In the decision below, the First District held section 61.13(2)(b)2.c. unconstitutional. See Sullivan v. Sapp, 829 So.2d 951, 952 (Fla. 1st DCA 2002). The Fourth District has held the same section constitutional. Spence v. Stewart, 705 So.2d 996 (Fla. 4th DCA 1998). No other court has decided the issue. Therefore, by simply quashing the decision below on the ground that the court never should have reached the issue, we remove any conflict. The majority's other asserted bases for reaching the constitutional issuethat it "will aid lower courts" and "afford guidance" essentially would allow us to discard the last resort rule and review constitutional issues whenever we desire. Majority op. at 34. After all, any opinion we issue about the constitutionality of a statute will always "aid lower courts" and "afford guidance"that is one of the main purposes of any opinion. Those reasons cannot, of themselves, justify a departure from the last resort rule.
In contrast to the veritable library of cases adhering to the last resort rule, the majority cites three cases that did not: State v. Dye, 346 So.2d 538 (Fla.1977), Green v. State ex rel. Phipps, 166 So.2d 585 (Fla.1964), and Ex parte Lewis, 101 Fla. 624, 135 So. 147 (1931). Majority op. at 35. The most recent of these cases is twenty-six years old. Given that we have since several times adhered to the rule, I can only conclude that either these cases are anomalies in our jurisprudence or that they allow an exception to the doctrine in extremely limited circumstances. If the former, we should adhere to the overwhelming number of other cases that counsel restraint. If the latter, we should at least define the parameters of the exception so that we do not simply reach constitutional issues whenever we find a particular statute distasteful. In fact, in Ex parte Lewis, on which the majority relies, the Court only reached the issue because it upheld the statute. 135 So. at 150 (noting that "if our conclusions on the constitutionality of the statute were adverse to its validity, we would, for the reasons just referred to, hesitate to so declare, in view of the fact that this case might be disposed of on other grounds which would render such declaration unnecessary").
*41 The majority also cites cases recognizing "the well-settled principle that `once an appellate court has jurisdiction it may, if it finds it necessary to do so, consider any item that may affect the case.'" Majority op. at 34. I have no quarrel with that proposition; in fact, it is the very basis for our considering the grandmother's failure to satisfy the requirements for intervention. That is not the point. The last resort rule works as a rule of prudence, to refrain from considering a constitutional issue even though we have the authority to do so.
For these reasons, I cannot fully join in the majority opinion.
WELLS and BELL, JJ., concur.
NOTES
[1] Sapp acknowledged under oath that he is the natural father of the child.
[2] The record is silent as to when the father assumed custody of the child following the mother's death and why it was necessary for the maternal grandmother to request court-ordered visitation. However, because the grandmother's motion was filed within one week of her daughter's death, it is assumed that the father received immediate custody of the child. On October 2, 2001, a hearing was held on the grandmother's motion to intervene, at which time the judge suggested the parties attempt to settle their differences amicably. The record is again silent as to the outcome of any negotiations between the parties, or if they even occurred.
[3] The portion of the statute reading, "nor do grandparents have legal standing as `contestants' as defined in s. 61.1306" was repealed from section 61.13(2)(b)2.c. during the 2003 Legislative session. See ch.2003-5, § 2, Laws of Fla.
[4] We decline to address the remaining issue asserted by the petitioner, namely whether the trial court properly denied the grandmother's motion to have a guardian ad litem appointed for the child, as it is unrelated to the issue upon which this Court's jurisdiction is based.
[5] Lisa A. Kloppenberg, Avoiding Constitutional Questions, 35 B.C. L.Rev. 1003, 1025 (1994) (referring to the prudential rule of avoiding constitutional questions as the "last resort rule").
[6] See, e.g., State v. Boyd, 846 So.2d 458, 459-60 (Fla.2003); State v. Mozo, 655 So.2d 1115, 1117 (Fla.1995); Johnson v. Feder, 485 So.2d 409, 412 (Fla.1986); Floridians United for Safe Energy, Inc. v. Public Serv. Comm'n, 475 So.2d 241, 242 (Fla.1985); State v. Covington, 392 So.2d 1321, 1322-23 (Fla.1981); Briklod v. State, 365 So.2d 1023, 1027 (Fla.1978); Singletary v. State, 322 So.2d 551, 552-53 (Fla.1975); McKibben v. Mallory, 293 So.2d 48, 51 (Fla.1974); Gonzales v. City of Belle Glade, 287 So.2d 669, 670-71 (Fla.1973); Peoples v. State, 287 So.2d 63, 66 (Fla.1973); Williston Highlands Dev. Corp. v. Hogue, 277 So.2d 260, 261 (Fla.1973); Metro. Dade County Transit Auth. v. State Dept. of Highway Safety & Motor Vehicles, 283 So.2d 99, 101 (Fla.1973); Walsingham v. State, 250 So.2d 857, 858 (Fla.1971); In re Estate of Sale, 227 So.2d 199, 201 (Fla.1969); Mounier v. State, 178 So.2d 714, 715 (Fla.1965); N. Am. Co. v. Green, 120 So.2d 603, 606 (Fla.1959); State v. Bruno, 104 So.2d 588, 590 (Fla.1958); State ex rel. Losey v. Willard, 54 So.2d 183, 187 (Fla.1951); Peters v. Brown, 55 So.2d 334, 335 (Fla.1951); Mayo v. Market Fruit Co. of Sanford, Inc., 40 So.2d 555, 559 (Fla.1949); State ex rel. Crim v. Juvenal, 118 Fla. 487, 159 So. 663, 664 (1935); Crumbley v. City of Jacksonville, 102 Fla. 408, 135 So. 885, 887 (1931); Lippman v. State, 72 Fla. 428, 73 So. 357, 361 (1916); State v. Parker, 57 Fla. 170, 49 So. 124, 125 (1909); Ex parte Bailey, 39 Fla. 734, 23 So. 552, 555 (1897); Franklin County v. State ex rel. Patton, 24 Fla. 55, 3 So. 471, 472 (1888).
[7] See, e.g., M.Z. v. State, 747 So.2d 978, 980 (Fla. 1st DCA 1999); State v. Burdette, 826 So.2d 1092, 1094 (Fla. 2d DCA 2002); Dep't of Revenue v. Good, 398 So.2d 938, 939 (Fla. 3d DCA 1981); In re Forfeiture of One Cessna 337H Aircraft, 475 So.2d 1269, 1270-71 (Fla. 4th DCA 1985); Crawford v. State, 662 So.2d 1016, 1017 (Fla. 5th DCA 1995).
[8] See Art. V, § 3(b)1, Fla. Const. (providing for review as of right to this Court from decisions of the district courts of appeal declaring unconstitutional a state statute).